JONES, Admr., Plaintiff-Appellant, v. NEU, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24404.   Decided May 29, 1958.

Burgess, Fullmer, Parker & Weh, for plaintiff-appellant.
Joseph H. Brady, for defendant-appellee.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment or final order entered by the Probate Court of Cuyahoga County dismissing the administrator's complaint filed against Lester O. Neu for concealment of assets of the Estate of Anna M. Neu.

The deceased, Anna M. Neu, died April 26, 1957. She was eighty years of age at the time of her death. The decedent opened a savings account in the Society for Savings Bank on August 24, 1922. On August 3, 1945, she signed a printed form, prepared by the bank, providing that Lester Osborn Neu was authorized to withdraw from the account "such sums as he may call for." On March 1, 1957, the decedent was taken to a nursing home for care where she stayed until her death. On April 4, 1957, Lester O. Neu withdrew two separate amounts from this account. The first amount withdrawn was $400.00, followed later that day by a withdrawal of the remaining balance of $9,061.09, which he transferred to his personal savings account at the Society for Savings. The account to which he transferred the money was the account his mother started for him on the same day the account here being considered was begun.

It is the claim of the administrator that the money withdrawn by Lester O. Neu was the property of the deceased when withdrawn and also her property at the time of her death. This action seeks an order for the return of the money to the estate and is brought under the provisions of §2109.50 R. C. From the dismissal of the administrator's complaint, the following errors are presented in this appeal:

1. Said Court erred in overruling complainant's motion for new trial and in entering judgment dismissing the complaint against defendant Lester O. Neu.

2. The Court's written findings of fact are manifestly against the weight of, are not sustained by any, and are contrary to the evidence.

3. The Court's written conclusions of law are erroneous and are contrary to law.

4. The judgment is contrary to law.

5. The judgment of the Court is manifestly against the weight of, is not sustained by any, and is contrary to the evidence.

6. The Court erred in refusing to admit evidence offered by the appellant to the refusal of which the appellant duly objected.

7. The Court erred in the admission of evidence offered by the appellee Lester O. Neu, to which the appellant objected.

8. Other errors of law appearing during the progress of the trial and apparent on the face of the record.

There are undisputed facts which need to be stated before considering the contradictory evidence presented by the parties in giving consideration to the errors presented.

Two savings accounts were opened at the Society for Savings Bank of Cleveland, Ohio, by the decedent on August 24, 1922. The first was opened in her own name (Anna M. Neu) by a deposit of $350.00, the account being No. 508731. She was then about forty-four years of age. At the same time, she also opened a savings account (No. 508732) in the name of and for her son, Lester O. Neu, who was then twelve years of age. Both accounts remained active or current until April 4, 1957, when Lester O. Neu closed out his mother's account by first taking our four hundred dollars which he received in cash, and then later, on the same day, by transferring the balance of his mother's account (No. 508731), to-wit, the sum of $9061.09 to his own account (No. 508732). Thus, for thirty-five years, each carried a separate bank account in the same bank in their individual names. On the day the son's account was opened a notation was made thereon that "Anna M. Neu may draw for him" This, of course, was necessary because of his age. A trusteeship, however, was not provided. There is no evidence that this power was ever withdrawn and, therefore, continued until the day of the mother's death.

On August 3, 1945, the following authority providing that Lester O. Neu could draw from the account of his mother, Anna M. Neu, was executed:

"Cleveland, Ohio
August 3, 1945.

"The Society for Savings in the City of Cleveland, is hereby notified that Lester Osborn Neu (signature) is authorized to withdraw hereafter from my account No. 508731 with said Society, such sums as he may call for.

"Revocable only by notice in writing, signed by me, and accompanied by the passbook.

(s) Anna M. Neu."

On the date this authority was signed, $2962.50 was on deposit in the account and a notation was put on the passbook "Lester O. Neu may draw for her 8/3/45." On this date (August 3, 1945), a deposit of $1789.68 was made. Also on that day Lester O. Neu had a balance in his own account of $1337.04.

248

There were two others bank accounts disclosed by Lester O. Neu in his testimony. They were deposited in a branch of the Cleveland Trust Company located at Clark Avenue and West 25th Street, one account being in the name of Anna M. Neu and the other in the name of Lester O. Neu. Each held the power to draw from the account of the other. These accounts were closed by Lester O. Neu on April 25, 1957, one day before the death of Mrs. Neu. He testified that there was about $5,000 in his account at the Cleveland Trust Company and about $1,000, plus interest, in Mrs. Neu's account at that time. The date that these accounts were opened is not disclosed in the record.

The deceased owned the house where she and her son, Lester O. Neu, lived. The daughter, Mrs. Edna Arnold, prior to her marriage, also lived there. Mrs. Neu's brother was a permanent board-paying resident at this address. The son, Lester O. Neu, who lived in his mother's home all his life, never paid a stipulated price for his room and board. He testified as follows:

"Q. Did you pay any board at your house, there?

"A. No, not directly, just what ever I—when I cashed my checks, such as a payroll check, I paid the utility bills all in one trip and the rest of the money went in to my mother year after year."

The defendant testified that his mother was employed at the City Hospital until 1936 and that her brother, who lived with them, paid from $6.00 to $10.00 per week as the years progressed and that his mother had no independent income after leaving her employment at City Hospital.

The decedent's bank account grew from occasional deposits of not to exceed $100.00 at any one time until July 14, 1937 when a deposit of $1204.39 brought the balance to $2416.39. It then continued to grow by adding dividends received from the bank and by small deposits until August 3, 1945 when a deposit of $1789.68 brought the balance to $4752.18. In December, 1947, a deposit of $3021.25 increased the account to $7889.81. Only two other deposits of any consequence were made, aside from the yearly bank dividends, after the last date mentioned, i. e., $100.00 on March 2, 1951 and $300.00 on March 4, 1952.

The personal account of Lester O. Neu prior to March 2, 1945, when the balance was $1327.85, is not shown by the record. The more sizeable deposits on that part of this account shown in the record, aside from dividends, were $273.44 on August 5, 1947, $600.00—November 10, 1950, $500.00—September 26, 1951, and $500.00—December 4, 1952, the balance on December 31, 1956 being $3629.29. When the deposit of $9061.09 was transferred to this account from the deceased's account on April 4, 1957, the total balance became $12,690.38.

Lester O. Neu owned a house from which he derived an income. This house was mortgaged. The income from rent, the required payments of taxes and mortgage payments, are not disclosed. Lester O. Neu was employed for ten years prior to the date of the trial (June 12, 1957) as a tower man for the Erie Railroad Company. His income from such employment is not in the record, nor is any employment prior thereto disclosed. There is no evidence in the record that any of the deposits made to the account of Anna M. Neu were to be considered as Lester O. Neu's

money unless his testimony of what occurred on August 3, 1945 be so considered. This testimony disclosed what took place when the authorization permitting him to withdraw from his mother's account was signed at the bank, and a deposit of $1789.68 was made. Lester O. Neu testified about this occasion as follows:

"Q. Coming down to August the 3rd of 1945, there has been testimony here as to transfer or alterations in these bank books or these bank accounts. Now, can you explain to the Court, in your own words, on or about August the 3rd of 1945, what brought about these changes in this bank book?

"A. That was done so that the money would be available in case anything happened to me and I put it in her—her bank, in her bank account and she could draw also on mine. We was both there together, as I recall it, right at the same time."

The fact is that there is no explanation of any kind in the record as to any other deposit, large or small, made to the account of Anna M. Neu.

The claim of Lester O. Neu to the bank account of his mother was originally based on two contradictory grounds, that is either that the money was a gift to him, which was alleged to have been made about April 4, 1957, or that it was his own money, deposited by him to her account. This controversy is entirely based on Lester O. Neu's testimony. By opening statement, his counsel claimed the money both by gift and by ownership. On this question, Lester O. Neu testified as follows as to his visit to his mother at the rest home on or about April 3, 1957:

"Q. Now, Mr. Neu, how about the first, second or third of April, 1957, what, if any, conversation took place between you and your mother, Anna Neu in the rest home as regards this account?

"MR. JONES: Objection.

"THE COURT: Overruled, he may state it.

"Q. Explain it to the Court.

"A. She called to see her bank books, one from Cleveland Trust and the one from Society for Savings, the next time I come out, and I did so, and I opened the package and showed her what she had. She said it was my money and that I could have it and that is the way she wanted it.

"Q. What, if anything, did she do at this time, if anything; I mean, just what happened? Explain it.

"A. I took the bank books from under the rug in the bedroom, that is where she kept them, and took them to the rest home. I opened them up, explained how much money she had in these two accounts. She told me she wanted me to have the money and I took the bank books with me back to withdraw the money.

"Q. She told you she wanted you to have the money?

"A. That is correct."

And at the bank, on April 4, 1957, he testified:

"Q. What, if anything, did you do there?

"A. I needed the gift of it. I didn't want to draw all of this money of $9,000. I asked him where I had to go to turn this gift money over into my account and he directed me to the main floor, clean aside across

the main floor of the building into a railing there and I went to this desk here to this man and he took care of it.

"Q. And this man that you went to, did you explain to him why you were there?

"A. Yes, sir.

"Q. Well, what did you say then?

"A. I explained it, that this money was to go to me as a gift." He further testified:

"Q. And she told you, according to your testimony, that that money in that account in her name at the Society for Savings she wanted to give to you, is that right?

"A. Yes, sir, correct.

"Q. And what did you say to that?

"A. Well, naturally, it was all right with me.

"Q. All right. So, at that time, Mr. Neu, you considered those funds to be your mother's right?

"A. I wouldn't say that, no, the bank—my money there was banked in my bank account and it shows—

"Q. In other words, your mother was giving you your own money, is that what you are saying here?

"A. That is correct."

"* * *

"Q. No, excuse me, I meant the $9,400. What did you withdraw the $9,400 for at that time?

"A. That was a gift.

"Q. But you testified a minute ago that it was your money?

"A. That is right.

"Q. Then why didn't you withdraw it before April 4, 1957?

"A. Should I explain it?

"MR. BRADY: Explain it. He is asking for it. Explain it.

"A. All right, I was disqualified in the Army as having chronic asthma, I have that slip.

"THE COURT: Talk slower, please.

"MR. BRADY: Talk slower.

"A. I was disqualified in the Army in '42 with chronic asthma, and I have a sore throat now, you will have to pardon me, I had no life insurance whatsoever, no automobile insurance whatsoever, and a mortgage on the house, and if anything happened to my funds, I figured I would lose it all, and I didn't want to be in that financial straits.

"Q. You said you would lose it all. Now, I just don't follow that, Mr. Neu. Can you elaborate on that a little?

"A. Well, like I said, I was severely sick, I had no life insurance, not to this day. Now, of course, I have automobile insurance, I—

"Q. When were you discharged from the Army?

"A. I was 4-F to begin with in '42.

"Q. Well, you had all of those problems from 1942 to 1957, didn't you; you had the same problems then that you had on April 4, 1957, didn't you?

"A. Well, yes.

"Q. Well, then why didn't you withdraw the money shortly after 1942; why did you wait until 1957?

"A. It was still safely—if I had an accident or anything at all, death, anything, the money I figured was mine there, lying there, it was safe there."

The trial court in its conclusions of law did not mention the subject of gift. Nor was there any finding of fact or law on the issue of the mental capacity of the decedent at the time it was claimed a gift was made, that is, at or about April 2, 1957, although evidence on this question was presented by both parties as shown by the record.

For the reason that the trial court did not find a lawful gift of the money in the account to him as claimed by Lester O. Neu, we confine our consideration of the errors claimed with respect to whether the money in the bank account of the decedent was that of Lester O. Neu, or, if not, whether the power to draw from her account, granted to Lester O. Neu, by his mother on August 3, 1945, gave him a joint ownership or title to the money in the account or to such as he should actually withdraw by reason of such authority. On these questions, the trial court's findings of fact are not sustained by sufficient evidence.

The finding of fact by the trial court that: "No agency or third party beneficiary relationships can be determined from the contract," is a conclusion of law and not a finding of fact and the finding that: "There was consideration for this contract since Lester O. Neu caused Anna M. Neu's name to be added to passbook No. 508732, at the same time under the same circumstances" is not supported by evidence since Anna M Neu's right to withdraw from Lester O. Neu's account was contracted for in 1922 when the account was opened and the only change since that time was the fact that Lester O. Neu's signature was placed on the card February 11, 1937, so that he could withdraw from his own account.

The conclusions of law are as follows:

"The Court draws the following conclusions of law in the instant case:

"That it has jurisdiction herein.

"That the complaint must be sustained by the preponderance of the evidence.

"The Court finds that the contract (exhibit, '5') with the Society for Savings Bank, in the City of Cleveland, by its terms, creates a joint account, insofar as, withdrawals may be made by either party, at any time and in any amount.

"That the contract (exhibit, '5') is not ambiguous, does not create an agency or a third party beneficiary, and that there is legal consideration for said contract.

"That there was no interest in the funds, in decedent's name at the time of her death.

"The Court finds that defendant did not conceal, embezzle, or convey away, or had in his possession any of the decedent's funds.

"The Court, therefore, finds the complaint is not sustained by sufficient evidence, and must be dismissed."

The finding or conclusion of law that the authority signed by the decedent authorizing Lester O. Neu to withdraw from the account creates a joint account insofar as withdrawals made by either party at any time and in any amount cannot be sustained. The authorization of another to

draw from one's account without more does not transfer title to the money therein or to money withdrawn under the authority given. The purpose of granting the privilege to withdraw funds from another's bank account must be established to determine its effect on the title or right to the money. So far as this record is concerned, there is no evidence on that subject other than the written authorization quoted above. There is not a word in the record that Mrs. Neu said or did anything on August 3, 1945 except sign the withdrawal authority. The record, therefore, does not disclose a purpose to make a gift or create a joint ownership of the account and a joint and survivorship account was, therefore, not created by the language of the contract granting authority to withdraw from the account. While the owner of the account made it possible for and did consent to Lester O. Neu taking possession of monies in the account, the missing element to the claim of joint ownership by Lester O. Neu to such monies is the lack of an expressed donative intent by the decedent when such authority was given.

In Brown on Personal Property, the rule stated that the making of a deposit of funds in a bank in the name of another, without expressing donative intent, does not create a gift, is based on the same principle that is applicable here. In paragraph 63, page 211 of the Second Edition (1955), in considering the question on the authority of Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, the author says:

"The mere deposit of funds to the credit of another does not, however, standing alone, prove a gift. According to a leading New York case, 'We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership. It is attributable to various reasons; reasons connected with taxation; rules of the bank limiting the amount which any one individual may keep on deposit; the desire to obtain high rates of interest where there is discrimination based on the amount of deposits, and the desire, on the part of many persons, to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift, there are contemporaneous facts or subsequent declarations by which the intention can be established, independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would, in the great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor.

"Accordingly, when it satisfactorily appears that the form of the account was not due to a donative intent on the part of the depositor but to some of the reasons mentioned by the New York court, the gift fails for lack of a proper intent. * * *"

In the case of Bender v. Cleveland Trust Co., 123 Oh St 588, 176 N. E. 452, it was difficult for David Bender to travel to the bank, and for his convenience, an arrangement was made for his wife to withdraw funds from his bank account. The notation on the account was "Either May

Draw." There was a clear presumption to be deduced from the provisions of the will of Bender that a gift was not intended. The court, in holding the money was that of the husband's estate, although the wife had drawn out the funds before his death, said on page 594:

"It must be concluded that there was no gift, for the reason that the evidence fails to disclose a delivery coupled with the intention to pass the property as a gift. Although the cases are not in accord, the weight of authority supports the view above indicated. The more recent cases involving this question are fully annotated in 48 A. L. R., 189."

Also in the case of **Bauman v. Walter, 160 Oh St 273,** 116 N. E. 2d 435, money of the wife was deposited in two bank accounts, one a savings account, the other a commercial account. Both names were placed on the accounts, i. e., Mr. or Mrs. Edwin M. Walter, on the savings account, and Celia A. Walter or Edwin Walter on the checking account. The wife was killed by the husband before any of the money was withdrawn. The husband being disqualified from the right to inherit from his wife (§2105.19 R. C.) contested the right to the money with the father of the deceased, her only next of kin, on the basis that the deposit made in both names gave him an interest in the money. The court said, beginning on page 275:

"The husband certainly cannot claim that anything was transferred to him for a valuable consideration. Nothing in the record supports a conclusion that the husband incurred any detriment or that there was any bargain under which the wife was to receive any benefit from the husband which could represent such a consideration. Likewise there was no transfer in the requisite form to constitute a valid bequest. Furthermore, since the wife until her death retained a complete power to withdraw all or any part of the money deposited in the account, there was apparently no relinquishment by the wife of dominion and control over the money deposited or over the obligation of the bank to pay back to her the whole amount of that money. It does not appear that the wife had relinquished such dominion and control over the deposits by delivery to the husband of any passbooks, the presentation of which would be necessary to effect withdrawals. Cf. **Polley et al., Admrs., v. Hicks, 58 Oh St 213,** 50 N. E., 809, 41 L. R. A., 858. Hence, an essential element of a gift or assignment without consideration was lacking. See **Gano v. Fisk, 43 Oh St 462,** 3 N. E. 532, 54 Am. Rep., 819, and **Flanders v. Blandy, 45 Oh St 108,** 12 N. E. 321. As hereinbefore observed, these deposits were not payable to the wife and the husband but were payable to the wife or the husband. In the former instance, it would be arguable that neither the husband nor the wife could withdraw funds without the concurrence of the other and that, therefore, the wife would have relinquished at least part of her dominion and control over the deposits. Cf. **In re Estate of Hutchison, 120 Oh St 542,** 166 N. E. 687."

In the case of **Union Properties Co. v. The Cleveland Trust Co., 152 Oh St 430,** 89 N. E. 2d 638, John and Needa Allen, husband and wife, were the contracting parties with the Cleveland Trust Company with respect to a savings account, payable to the order of either or the

survivor of them. The Union Properties Company owned a judgment against John Allen and attempted by an execution proceeding to subject the account to the payment of the judgment. Evidence was introduced that in spite of the form in which the deposit was made, the money, in fact, was the property of Needa Allen. The court held in paragraph two of the syllabus:

"2. The money in such account is not subject to appropriation by the husband's judgment creditor, where it is found upon evidence of sufficient probative force that notwithstanding the form of the deposit the money is in reality the sole property of the wife."

The rule to be gotten from the cases is that the names in which bank deposits are entered on the records of the bank or the names authorized by contract with the bank to withdraw funds from bank accounts of others are not conclusive as to the true ownership of such accounts or the interest therein. Under our law, the relationship between the bank and the depositor is that of debtor and creditor and the ownership of the credit due from the bank is subject to the same rule as is to be applied to any other personal property. Possession alone or the bare right to withdraw funds is not decisive of the question.

Sec. 1105.09 R. C., provides:

"When a deposit is made, in any bank or trust company transacting business in this state, in the name of two or more persons, payable to either or the survivor, such deposit or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, whether the other is living or not, and the receipt or acquittance of the person paid is a sufficient release and discharge of the bank for any payments so made."

The foregoing section is a part of the Banking Code of Ohio and was enacted for the protection of the bank in disbursing funds held in accounts deposited in the names of two or more persons and made payable to either or the survivor. Under such a contract, the bank is protected by the section quoted in paying out to any of the persons named, however, the right to the property on the part of any of those named in the account, unless the contract and surrounding circumstances can be interpreted otherwise, must be established by evidence beyond or outside the terms of the contract with the bank.

In the case of **Cleveland Trust Co. v. Scobie, 114 Oh St 241, 151 N. E. 373,** the court held in the syllabus:

"Where a person opens a savings account in a bank to the joint credit of himself and another, payable to either, and balance at death of either payable to survivor, the authority to remain in full force until receipt by the bank from the depositor of written notice of its revocation, and the record shows that the depositor intended to transfer to the person to whom he made the account jointly payable a present joint interest therein equal to his own, and the passbook has been left in the possession of the bank for withdrawals by either party on the joint account, a joint interest is created in the right of the depositor in the deposit, and the person to whom the deposit is made payable jointly with the depositor, upon the death of the depositor, without his having

revoked the authority to draw, is entitled to the balance of the account."

In the Scobie case, the intention of the owner of the account to pass a present joint interest in the account was supported by letters clearly setting out the grantor's purposes. The question of the ownership of the monies in a bank account is always a question of fact.

In the instant case, it is absolutely certain that when the account was opened, it was the property of Anna M. Neu. Her continued exclusive possession of the passbook during the thirty-five years the account remained active was, at least, some evidence of her ownership in the funds deposited in the account. The authority granted Lester O. Neu on August 3, 1945, was limited to the right to draw from the account. It did not create joint ownership or survivorship rights in the money. Standing alone, and without evidence to support a different intention, the authorization designated him an agent of the owner with power to draw on the account. One's property in a bank account, as has been suggested, may be dealt with as the owner of such property desires. He may make a gift of it by complying with the essential requirements of a gift by expressing an intent to give, followed by complete surrender of all dominion over the property to the donee. He may, by contract, create a joint and survivorship right to the money in another or others, or he may sell a part or all of the account to another. We hold that the authority granted Lester O. Neu to draw from his mother's account did not create in him a joint ownership of the account and he had no right to the money deposited based on his authority to draw.

It is possible for one to deposit his funds in the bank account of another and by affirmative proof, thereafter establish his proportionate share or interest therein. When, under such circumstances, a provision granting such depositor the power to withdraw funds in another's account in which he has deposited his own money is contracted for with the bank, he may withdraw his funds at will. Here Lester O. Neu makes the claim that the money deposited in the account of Anna M. Neu was his money.

If it can be said that the court in its conclusions of fact and law determined that all of the money in the savings account of Anna M. Neu was, in fact, the money of Lester O. Neu, having been deposited therein as his money, then such conclusions are clearly against the manifest weight of the evidence. Many circumstances need to be considered in determining this question. As has already been suggested, there is no basis in the record for the claim that the money in her account prior to August 3, 1945 belonged to or was the property of any other person than Anna M. Neu. The conclusion that the money then and thereafter deposited was his, if such fact was so determined by the court, must be based on the testimony of Lester O. Neu which has been almost completely quoted above. Aside from his unsupported statements that the money was his and that his mother had no source of income except for the money he gave her, there are here many circumstances that could be found to have a direct bearing on the defendant's claim that the money in Anna M. Neu's account was the defendant's money. Such claims should have some support by showing his ability to accumulate above living costs some nineteen thousand dollars during

a fifteen year period (one-half of which was in his own bank account) without evidence of continuous employment and the amount realized from wages, the net amount of his rental income and other surrounding circumstances such as his own bank account in which deposits were made during this period.

The finding of the trial court that all the money in the savings account of Anna M. Neu was, in fact, the money of Lester O. Neu, is reversed as against the manifest weight of the evidence.

Some claim is made that evidence presented by the administrator was improperly received. The administrator, at the beginning of the case, called Lester O. Neu to give testimony relevant to the issues in the case. He did not declare when the witness was called that he was calling him for cross-examination. As a part of his testimony, he denied having told the undertaker employed by the family to attend to his mother's funeral, that "when my mother became incompetent, I withdrew all her money from the bank." The defendant denied making such statement. The undertaker was called and testified, over the objection of the defendant, based on the grounds that the administrator could not impeach his own witness, that Lester O. Neu said to him "his mother had become incompetent and he had appropriated her finances." The court ultimately permitted the administrator to recall Lester O. Neu for cross-examination on this subject and thereafter permitted the undertaker to testify as to what Lester O. Neu told him about his mother's incompetence and his withdrawal of the money. While the ultimate admission of the evidence ended any claim of error, we desire only to comment that a proceeding under §2109.50 R. C., is inquisitorial in character and the witnesses called are, in effect, witnesses of the court. In In re Estate of Black, 145 Oh St 405, 62 N. E. 2d 90, the court's ruling that the administrator was not estopped from presenting the undertaker's testimony was not prejudicial to the rights of the defendant.

This court, having concluded that the claim of a gift made to Lester O. Neu to the funds in the bank account of Anna M. Neu at the Society for Savings Bank on April 2, 1957, as asserted by Lester O. Neu, is not before us and having further concluded from the record that the contract of Anna M. Neu with the bank, entered into August 3, 1945, authorizing Lester O. Neu to withdraw funds from the account without other evidence to support such claim, did not transfer to him a joint interest therein and having further found that the court's judgment that all the money in the account was, in fact, the money of Lester O. Neu is against the manifest weight of the evidence, the cause is remanded for a retrial of all issues of fact originally presented to the Probate Court for determination.

HURD and KOVACHY, JJ, concur.