101 N.W.2d 557 (1960)
In the Matter of ESTATE of George BERZEL, Deceased.
Mary FISH, Appellant in District Court; Respondent,
v.
Mary BERZEL, as Executrix of Last Will and Testament of George Berzel, Deceased; Mary Berzel, Appellees in District Court; Appellants, and
St. Joseph's Church of Dickinson, North Dakota, and Katholisches Schwestern Haus, Appellees in District Court.
No. 7859.
Supreme Court of North Dakota.
February 17, 1960.
*560 Reichert & Reichert, Dickinson, N. D., for appellants.
Mackoff, Kellogg, Muggli & Kirby, Dickinson, N. D., for respondents.
MORRIS, Judge.
The last will and testament of George Berzel dated June 2, 1956 was admitted to *561 probate in the County Court of Stark County on July 30, 1956. The petitioner in that proceeding was Mary Berzel who was named in the will as executrix. The respondents were Mary Fish, St. Joseph Church of Dickinson, N. D., and Katholisches Schwestern Haus. The probate proceeded to a point where an order was entered allowing the final report and account of the executrix and a decree of distribution rendered and entered, both dated March 7, 1958. Mary Fish appealed from both the order and the decree to the District Court of Stark County. The matter was there tried de novo to the court without a jury. The district court rendered judgment on June 9, 1959 vacating and setting aside the order and decree and directing the county court to require a further final account and report not inconsistent with the judgment and the rendition of a final decree of distribution in conformity with the decision of the district court and with a judgment of the district court which had been entered in an action in that court brought by Mary Fish as plaintiff therein and Mary Berzel personally and as executrix of the last will and testament of George Berzel, deceased, as the defendant, for the specific performance of an adoption contract. The judgment rendered in the action for specific performance was appealed to this court and affirmed. See Fish v. Berzel, N.D., 101 N.W.2d 548.
Mary Berzel personally and as executrix of the last will and testament of George Berzel, deceased, has appealed to this court from the judgment rendered on the appeal from county court to the district court and has demanded a trial de novo herein.
The last will and testament of George Berzel, deceased, made the following specific bequests: (1) $150 to the Mass Foundation of St. Joseph's Church of Dickinson; (2) $100 to St. Joseph's Church of Dickinson; (3) $1,000 to Katholisches Schwestern Haus, Engels Gasse, Speyer am Rhein, Germany, for the care of the decedent's sister, Elizabeth Breitschafter, for the rest of her natural life; (4) personal effects of the deceased, household furniture, and any automobile owned by the deceased at the time of his death to his wife, Mary Berzel. The residue of the estate was bequeathed as follows:
"a. To my wife, Mary Berzel, two-thirds (2/3) of all the rest of my property, real, personal and mixed, to have and to hold, forever.
b. To my daughter (though not legally adopted by me, I have always and do consider Mary Fish as my daughter and wish her to share as a legally adopted daughter) Mary Fish, one-third (1/3) of all of the rest of my property, real, personal and mixed, to have and to hold, Forever."
Mary Berzel was designated as executrix without bond and given a power of sale to sell the property of the estate at public or private sale.
Mary Berzel challenges determinations of the district court with respect to seven items of the final account and report as approved in the county court which were disallowed or modified by the district court. The facts and contentions of the parties with respect to these items will be set forth and considered separately.
The first item consists of 24 U. S. Savings Bonds Series E having a total value of $9,742.20. A one-half interest in these bonds in the sum of $4,871.10 was listed in the amended inventory for estate tax purposes. Neither the bonds nor any interest therein was shown in the final report as an asset of the estate or included in the order allowing the final report and account or in the decree of distribution. The bonds were payable to George Berzel or Mary Berzel. Thus they were co-owners of the bonds.
Section 47-0206, NDRC 1943 provides that:
"A joint interest is one owned by several persons in equal shares by a *562 title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants."
It is the contention of Mary Fish that because the bonds on their face do not state them to be held in joint tenancy nor is any provision for survivorship contained therein that the interest of the payees is that of a tenant in common and that no right of survivorship exists with the result that upon the death of George Berzel it must be presumed that Mary Berzel owns a half interest and that the other half interest vested in the estate, became an asset thereof and must be distributed under the terms of the will.
Mary Berzel contends that the right of survivorship is supplied by the Treasury regulations under which Series E bonds are issued and that the purchase of the bonds by George Berzel must be construed to have been made pursuant to the regulations which it is argued provide the express declaration of survivorship.
One-half of the value of the bonds appears to have been included in the inventory in compliance with Section 57-3706, NDRC 1943 which provides that the gross estate of a decedent for estate tax purposes shall include the value of interests in property held as joint tenants and that the value of the interest of the decedent in such property shall be determined by dividing the value of the property by the number of joint tenants. The mere listing of an interest in the bonds in the inventory does not have the effect of making that interest an asset of the estate.
This court has considered two cases involving the rights of co-owners or their estates in Series E savings bonds. Little-john v. County Judge, Pembina County, 79 N.D. 550, 58 N.W.2d 278, 283, 39 A.L.R.2d 690, involved a gift inter vivos by one co-owner to another of Series E and Series G savings bonds. In rejecting a contention that such a gift was contrary to Treasury regulations, we said:
"As we read this and other federal regulations, when a bond of the co-owner type is issued, each co-owner becomes vested with a present interest in the bond, and the bond itself and the regulations confer the right of survivorship upon the co-owner. There is nothing in these regulations to prohibit the transfer from one co-owner to the other of his interest in the bond. It is true, of course, that such a transfer cannot in any way impair the right of the United States to discharge its obligation under the bond in the manner provided by the bond and regulations by making payment to the survivor, but the preservation of that right in the government does not result in the abrogation of the right of one co-owner to transfer to the other co-owner, by gift inter vivos or otherwise, his interest in jointly owned property and the transfer of such an interest by one co-owner to another is not a violation of the regulatory provisions prohibiting transfer of United States Savings Bonds."
See: Silverman v. McGinnes, 3 Cir., 259 F.2d 731; Annotation 39 A.L.R.2d 698.
In re Kaspari's Estate, N.D., 71 N.W.2d 558, 563, also involved Series E Savings bonds. Martin Kaspari was survived by his widow, Inez Mae Kaspari, and six daughters. He had executed a will in which his wife was appointed executrix. Included in the property of which he died seized were Series E savings bonds payable to Martin Kaspari or Inez Mae Kaspari. She listed in the inventory as assets of the estate one-half of the value of the bonds. It was contended that the entire value of the bonds should have been included as assets of the estate. We decided that the bonds were held in joint tenancy with the right of survivorship, and said:
"Where Series E Savings Bonds are listed in the name of two persons as *563 co-owners, and during the lives of both co-owners, a bond so issued will be paid to either co-owner upon request without the signature of the other. If either co-owner dies while the bond remains a valid obligation, the surviving co-owner is recognized as the sole and absolute owner of the bond and entitled to a payment or reissue as though the bond had been registered in his or her name alone. Little john v. County Judge, Pembina County, 79 N.D. 550, 58 N.W.2d 278, 280, 39 A. L.R.2d 690. All of the Series E bonds issued as set forth, remaining unpaid at the time of the death of Martin Kaspari, became the sole and absolute property of Inez Mae Kaspari. Hence the inclusion of one-half of their value in the inventory favored the appellants and augmented the estate to their benefit."
We further said:
"Such inclusion (for tax purposes) does not, however, change the title status of the property resulting upon the death of a joint tenant where survivorship of real and personal property, or co-ownership rights are involved of United States Savings Bonds. Except for estate tax purposes, it was unnecessary for the executrix to include in the inventory joint tenancy property held with right of survivorship by her and her husband. This also applied to co-ownership bonds. When she accounted for half of the value of all such property, she was doing more than the law required."
In both of these cases we recognize the right of survivorship as being an incident of co-ownership supplied by the Treasury regulations. In Little john v. County Judge, Pembina County, supra, we hold that the regulations do not prohibit the transfer inter vivos from one co-owner to the other. In the Kaspari case we definitely say that the surviving co-owner is entitled to the entire interest in the bond and no part or interest therein becomes a part of the estate of the deceased. The application of the law set forth in these cases requires us to hold that upon the death of George Berzel the entire interest in the Series E bonds passed to the surviving co-owner Mary Berzel to the exclusion of his estate. The judgment of the district court determines that one-half of the bonds became an asset of the estate. The judgment in this respect is in error and on this point it is reversed.
The next challenge to the decision of the district court involves an item of the amended inventory, listed for tax purposes, of one-half of a savings account in The Liberty National Bank of Dickinson, N. D. in the name of "Mr. and/or Mrs. George Berzel" in the sum of $2,841.79. Here again Mary Berzel contends that she is entitled to the entire account of $5,683.57. The sheet from the bank savings deposit ledger showing this account is in evidence. This ledger sheet apparently served as a signature card.
At the top is this statement:
"The undersigned, hereby agree to be bound by the by-laws, rules and regulations governing the savings department of this Bank, as the same appear in the pass book, and as they may be altered or amended thereafter. In case this account is joint and several, we further agree to the conditions as provided below."
The statement is followed by two lines for signature. The only signature appearing on it is that of Mary Berzel. All deposits to this account were made by Mary Berzel, the first being on January 10, 1955 in the sum of $500 and the last being on June 20, 1956 in the sum of $2,000. The evidence does not show that George Berzel made any deposits to the account and does show that he made no withdrawals. Only two withdrawals were made, both by Mrs. Berzel, the first on December 16, 1955 of $600 and the second on February 10, 1956 of *564 $700. The parties stipulated with respect to this account that:
"According to the Bank's records, the source of the deposit of $500 on January 10, 1955, $2000 on September 14, 1955, and $2000 on June 20, 1956, is not shown. The source of deposit of $408 on May 20, 1955, is a certificate of deposit which was cashed and which was payable to both George Berzel and Mary Berzel. The same is true with respect to the deposit of $2040 made on June 15, 1955."
The pass book is not in evidence. There is no evidence of its contents. Thus there is available to us no direct and positive evidence of the contract between the Berzels and the bank or between each other.
Section 6-0366, NDRC 1943 provides that:
"When a deposit has been made with any banking association in the name of two persons, payable to either or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons whether the other be living or not. The receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to such banking association for any payment so made."
Under this statute the bank would have been protected from liability had it permitted withdrawals by George Berzel. It is for the protection of the bank but it does not establish that George Berzel had a property interest in the deposit. Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841; Dyste v. Farmers'& Mechanics' Savings Bank, 179 Minn. 430, 229 N.W. 865; Barbour v. First Citizens National Bank of Watertown, S.D., 86 N.W.2d 526; Jones v. Neu, 106 Ohio App. 161, 150 N.E.2d 858.
Mary Fish argues that one-half of the savings account belongs to the estate of George Berzel upon the premise that the account was primarily his and that Mary Berzel was not a joint tenant; that at the most she became only a tenant in common in favor of whom no right of survivorship was created. We agree that no joint interest was created as provided by Section 47-0206, NDRC 1943. Neither was a joint tenancy or interest created by contract as far as this record shows. The contract with the bank, which included the recitals in the pass book, is not established. Moreover such contract as there may have been does not appear to have been assented to by George Berzel for he did not sign the savings deposit ledger. It does not appear that he made any deposits and the only two withdrawals were made by Mary Berzel. The circumstances point strongly to the conclusion that the account was established by Mary Berzel alone. They indicate that she made the first deposit of $500 on January 10, 1955 and that she received the pass book since hers is the only signature appearing on the ledger. That the pass book continued in her possession is indicated by the withdrawal orders that she signed on December 16, 1955 and February 10, 1956, both of which contained this provision:
"This order will not be paid unless accompanied by savings pass book."
The only connection that George Berzel had with this account as far as the bank records show is the appearance in the caption at the top of the deposit ledger sheet of this statement:
"Mr. and/or Mrs. George Berzel, 118 1st Ave. West, Dickinson, N. Dak."
This statement is not sufficient to establish that the account was created in joint tenancy or that the right of survivorship was created by contract in view of the foregoing circumstances which militate against such a construction.
Having determined that Mary Berzel and George Berzel were not joint tenants and had not otherwise contracted with each other and with the bank that either had *565 an interest in the deposit as survivor of the other, we come to the question of who owned the deposit prior to George Berzel's death. The circumstances that we have already set forth strongly indicate that Mary Berzel had sole ownership and control of the deposit including the pass book. The eight deposits made to this account total $6,983.57. $35.57 was interest credited to the account by the bank. The source of $4,500 is unaccounted for and two deposits amounting to $2,448 represent two certificates of deposit that were in the name of George Berzel and Mary Berzel. All deposit slips appear to be in the handwriting of Mary Berzel. There is nothing in the record in any way reflecting upon the conduct or good faith of Mary Berzel in handling any of these transactions or indicating that any of the deposits were made in a manner other than as funds of Mary Berzel.
We must bear in mind that Mary Berzel is the one who opened the account. She is the depositor. In Michie on Banks and Banking, 1958 Cumulative Supplement to Volume 8, Section 15, it is said:
"The names, in which bank deposits are entered on the records of the bank, or the names of those authorized by contract with the bank to withdraw funds from bank accounts of others are not conclusive as to true ownership of such accounts or interests therein. The way an account is opened and maintained by the depositor is the controlling factor in determining ownership of a savings account carried without any deposit contract or express provision for survivorship."
Despite the fact that some of the funds deposited in the savings account were proceeds from certificates of deposit that had been in the names of George and Mary Berzel they will be treated as the property of Mary Berzel. There is no evidence of the actual interest, if any, of George Berzel in the certificates of deposit nor is there any evidence that Mary Berzel made the deposits otherwise than as owner of the money deposited. Did she by making the deposit in the form that it appears on the bank records make a gift of an interest in the deposit to her husband? We think not. The effect of depositing money to the account of the owner and another person depends upon whether the deposit was intended by the depositor to be a gift or trust and was so made that it constituted a valid gift or trust. In an annotation entitled "Deposit in name of depositor and another" on pages 882 and 883, 66 A.L.R., it is said:
"To constitute a valid gift by making a deposit in the name of the depositor and another, there must be an intention to make the gift. * * *
"There must also be an actual, constructive, or symbolical delivery of the pass book or certificate of deposit, or a parting with control over the property with the intention of passing title to the deposit."
In connection with this comment the annotator cites McGillivray v. First National Bank, 56 N.D. 152, 217 N.W. 150, 152. That case involved certificates of deposit payable to the deceased and her nephew. This court said:
"It is clear from this evidence that the deceased did not in her lifetime complete a gift of the certificates to her nephew, H. E. Montague. She at no time made any delivery of them to him, either actual or constructive. She retained at all times possession of the certificates and possession of the key to the safety deposit box, thus keeping control of them."
The court also held that no trust was created and that the funds represented by the certificates remained the property of the depositor.
We would further point out the significance of the fact that although George *566 Berzel's name appeared at the top of the savings deposit ledger he did not sign it as a depositor and never during his lifetime became qualified to withdraw any part of the deposit nor is it contended that during his lifetime he ever in any manner claimed or asserted any interest in the money that was deposited either before or after the deposit was made.
In Denigan v. Hibernia Savings & Loan Society, 127 Cal. 137, 59 P. 389, Ellen Denigan had deposited with the savings and loan society her own money and received a pass book in the names of "Frank Denigan or Ellen Denigan." There was no evidence of the form in which the account was opened on the books of the bank but the court assumed that it was opened in the same form in which it was entered upon the pass book. It was not shown that the husband had possession of the book until after his wife's death. It was held that there being no evidence of the purpose for which the deposit was made other than its form or of any intent to part with the title to the money and no delivery of the pass book to the husband with that intent, the facts were insufficient to establish a gift.
In an annotation it is stated in 149 A.L.R. 883 that:
"The fact that a passbook is made out in the names of two persons jointly is evidence simply of the depositor's intent that the deposit may be drawn out by either of the persons named."
This statement is made in connection with a discussion of the gift theory where only the fact of deposit to the joint account appears and supplements annotations in 48 A.L.R. 191, 66 A.L.R. 884, 103 A.L.R. 1128 and 135 A.L.R. 1003.
The contention is made with respect to both the savings bonds and the savings account that the inclusion of one-half in the inventory is an admission that one-half of these respective funds belonged to the estate. As has been pointed out, neither of these funds nor any part thereof was included in the final report and account of the executrix as property subject to distribution. We think the inclusion in the inventory amounts to no more than an indication of belief on the part of the executrix that the sums so listed were subject to inheritance tax under the statutes (Sections 57-3704 and 57-3706, NDRC 1943) and are not an admission of ownership of either the bonds or the savings account even though she may have been in error with respect to the requirements of the statutes.
We have reached the conclusion that Mary Berzel was the sole owner of the entire savings account in The Liberty National Bank and that the judgment of the district court erroneously directs the inclusion of an undivided one-half of such account in the final report and account as an asset of the estate. With respect thereto the judgment appealed from is reversed.
On September 6, 1956 the county court entered an order granting an allowance of $200 per month commencing on July 7, 1956 for the maintenance of the widow, Mary Berzel. The judgment of the district court set aside that order upon the discretionary ground that such maintenance was unnecessary.
Section 30-2608, NDRC 1943 after providing for notices of appeal from county court to the district court on questions of law alone goes on to say:
"Every other notice of appeal is sufficient if it designates: 1. The party who appeals; 2. The order or decree from which the appeal is taken; and 3. The intermediate orders, if any, upon which the appellant desires a review."
The appeal to the district court in this case is "from the whole of the Order Allowing *567 Final Report and Account rendered by the above named County Court of Stark County, North Dakota on the 7th day of March, 1958, and from the whole of the Final Decree of Distribution rendered in said cause by the above entitled County Court in and for Stark County, North Dakota on the 7th day of March, 1958." That statement is followed by further allegations but nowhere in the notice is it stated that the appellant desires a review of the order allowing the widow's maintenance which is an intermediate order. The notice of appeal did not bring to the district court for review any intermediate orders. The district court erred in attempting to review and reverse the order of the county court allowing Mary Berzel widow's maintenance. The judgment of the district court with respect to that order of the county court is therefore reversed.
The executrix paid to herself the sum of $3,275 as executrix fees and commissions. The payment of this sum is shown by the final account and report which was approved by the county court. The district court determined that she was entitled to only $1,080, thus reducing the fee by $2,195 which the judgment determines to have been an improper payment and adjudged that she held the latter sum in trust for the estate.
Section 30-2004, 1957 Supplement to NDRC 1943 provides that where the will does not provide for compensation, as in this case, the executor shall receive as compensation for services performed in caring for, managing and settling the estate:
"a. Five percent of the first one thousand dollars; b. Three percent of the next five thousand dollars; c. Two percent of the estate in excess of six thousand dollars up to fifty thousand dollars; d. On all of the estate in excess of fifty thousand dollars, the administrator (executor) shall be allowed such compensation as the court shall deem just and reasonable, but in no event shall it be in excess of two percent. 4. The court, for any extraordinary services, may make such extra allowances as may be deemed just and reasonable, but the total amount of such extra allowance shall not exceed the amount of commissions prescribed by this section."
The district court limited the compensation of the executrix to the mandatory commissions provided by paragraphs a, b and c above, which amounts to $1,080. He allowed nothing under paragraph d and gave as the reason therefor "she rendered no extraordinary service which entitled her to more." Compensation for extraordinary services is provided for under paragraph 4 and may be in addition to those commissions allowed under paragraphs a, b, c and d with the limitation that the total amount allowed for both ordinary and extraordinary services shall not be more than double the commissions provided by ordinary services. Bancroft's Probate Practice, Second Edition, Section 420; In re Hagerty's Estate, 97 Wash. 491, 166 P. 1139. The county court allowed compensation under paragraph d in the sum of $2,195 on the basis of two per cent on the inventory value of the estate in excess of fifty thousand dollars. Nothing was allowed for extraordinary services.
This case being here for trial de novo we have reviewed the evidence with respect to the services performed by the executrix in caring for, managing and settling the estate and have reached the conclusion that these services entitle her to some compensation under paragraph d but not the maximum of two per cent. We determine that the just and reasonable compensation that the executrix is entitled to receive under paragraph d is the sum of $1,000, making her total compensation $2,080. The judgment of the district court with respect to the compensation of the executrix is therefore modified accordingly.
The next point of controversy involves fees amounting to $5,740.92 which *568 the executrix paid to her attorney. This amount is composed of $4,040.92 attorney's fees and $1,700 commissions on the sale of real estate. All parties agree that the attorney's fees were calculated according to the schedule of fees recommended by the North Dakota Bar Association for ordinary services rendered in the probate of estates. These fees are recommended to be and were in this case based upon the inventory value of the estate. North Dakota has no statute prescribing the fees that may be charged by attorneys in connection with the settlement of estates or other probate matters. It is a general rule that administrators and executors may employ attorneys to advise and assist in the conduct of probate matters and that an attorney is entitled to collect a reasonable fee the amount of which depends upon the extent and nature of the services rendered, the amount of the estate, the time required in rendering the services and the ability, skill and experience of the attorney. Bancroft's Probate Practice, Second Edition, Section 433. The schedule of fees recommended by the Bar Association is not binding on the courts but may be considered in determining the reasonableness of the fee charged. The record on this appeal shows that the probate of this estate involved questions not encountered in a simple probate proceeding. It took the attorney "the better part of the week" to secure a list of the personal property in a warehouse for the purposes of inventory. Frequent advisory conferences were held with the executrix and an extended correspondence was carried on with Mary Fish who required detailed explanations concerning many matters involving the estate. The problems of the attorney were no doubt aggravated by the lack of harmony between the devisees. The trial court reduced the attorney's fee to $3,792.80, a reduction of $248.12, which under the circumstances appears to be unwarranted.
Included in the total amount paid to the attorney was $1,700 commissions for the sale of real estate. This is in addition to attorney's fees and involves commissions of three per cent on two transactions whereby Mary Fish and Mary Berzel sold their interests as heirs and legatees of George Berzel to the purchasers. These sales were not conducted through probate court or made on behalf of Mary Berzel as executrix and, as the district court held, they were private transactions of the heirs and not sales of property of the estate and not chargeable to it.
The judgment of the district court directed that the sum of $1,948.12 paid as attorney's fees and commissions was an improper payment and should be surcharged to Mary Berzel. The judgment is modified to reduce the surcharge to $1,700, the amount of the commissions only, and in such reduced amount this part of the judgment is affirmed.
The bequest of $1,000 to Katholisches Schwestern Haus for the care of the decedent's sister, Elizabeth Breitschafter, was refused and renounced by the Katholisches Schwestern Haus. Where a bill contains a general residuary clause sufficient to pass the bequeathed property and unless the will otherwise provides for the contingency of refusal, a refused or renounced bequest becomes a part of the residue of the estate and passes under the residuary clause. Page on Wills, Lifetime Edition, Section 1411. The executrix paid the bequest direct to the testator's sister, Elizabeth Breitschafter, in two payments of $500 each shown by the final report to have been made on January 18 and August 7, 1957. The district court held that this payment was improper and adjudged that she should be surcharged therewith.
These payments were not made as a partial distribution of the estate and were not authorized by the county court. They are shown in the final report. The executrix argues that they were made pursuant to an agreement with Mary Fish, the other residuary legatee. The extent of Mrs. Berzel's testimony on this point in response to a query as to what Mrs. Fish said *569 with respect to sending the money to Mrs. Breitschafter was that Mrs. Fish "was willing to agree that we send it to her." The attorney for the executrix touched upon the matter in his testimony to the extent that he discussed it with Mrs. Fish on the telephone but does not state what if anything Mrs. Fish agreed to.
Section 30-2120, NDRC 1943 provides that:
"If all the heirs, legatees, or devisees interested in an estate agree in writing upon a distribution and partition of the estate or the residue thereof, the county court upon the filing of such agreement may partition and distribute the estate accordingly."
The evidence falls short of indicating a compliance with this statute. We reach the conclusion, as did the district court, that the payment was not authorized and that the county court erred in allowing payments amounting to $1,000 to Elizabeth Breitschafter. The judgment of the district court with respect thereto is affirmed.
At the time of George Berzel's death there was on deposit in The Liberty National Bank a checking account in the sum of $1,009.89 which was maintained pursuant to a contract contained on a signature card bearing the caption "joint and several account payable to either or survivorMr. and/or Mrs. George Berzel." The signature card was signed by George Berzel and Mrs. George Berzel and contained this provision:
"It is further agreed that upon the death of either of us, the balance shall be the sole property of the survivor, and shall be payable to the order of such survivor, or the legal representative of such survivor, and on being so withdrawn, shall be a full acquittance and discharge to said Bank."
The district court properly determined that upon the death of George Berzel, Mary Berzel became the owner of the entire account. The court further held that Mary Berzel should not have caused one-half of the account to be inventoried and that it was not subject to inheritance tax as an asset of the estate. Upon the basis of that reasoning it was adjudged that the estate tax in the sum of $30.29, which was paid by the executrix on a one-half interest in the account, was an improper expenditure surcharged to Mary Berzel.
It was proper for the executrix to inventory one-half of the checking account as a part of the gross estate under the provisions of Section 57-3706, NDRC 1943 which provides that the gross estate shall include any interest in property held as a joint tenant or deposited in banks in the joint names of the decedent and any other person and payable to either or the survivor.
Section 57-3716, 1957 Supplement to NDRC deals with appraisals of taxable transfers, and states:
"The transfer shall be deemed to take place at the time of death, and all appraisals shall be as of that date. Wherever there has been a taxable transfer prior to death on which the tax has not been paid, the property transferred shall be considered a part of the estate and shall be appraised as of the date of death of the decedent and taxed according to the laws then in force."
In Section 57-3723, NDRC 1943 pertaining to liens for estate taxes it is said:
"In case of a resident decedent, beneficiaries shall share the burden of the tax in proportion to benefits received, unless otherwise provided by will."
Section 57-3726 in part provides:
"The tax commissioner shall approve the determination by the county court of the amount of the estate tax required to be paid, except where an estate is insolvent or where nothing remains *570 after payment of the debts of the estate other than property which is disposed of under the homestead and emption statutes of this state applicable thereto."
Section 57-3731 provides:
"An administrator or executor shall be liable for all taxes payable on the estate with interest as provided in this chapter until the same have been paid. In no case shall such administrator or executor be liable for a greater sum than is actually received by him."
In Section 57-3724, 1957 Supplement to NDRC 1943 it is said:
"No executor, administrator, or trustee shall be entitled to a final discharge in an estate in settlement of which taxes are due, unless he shall produce a receipt showing the payment of such tax."
All of the foregoing statutes are estate tax statutes and the estate referred to therein includes all probatable and nonprobatable assets that are required to be inventoried as a part of the gross estate for estate tax purposes.
We reach the conclusion that one-half of the checking account was a nonprobatable asset for tax purposes of the estate of George Berzel, deceased; that the estate tax thereon was primarily the liability of the executrix; that Mary Berzel personally as beneficiary must ultimately assume the burden of payment of this tax and while she might legally pay it as executrix it must be charged to her and deducted from her share of the estate upon final distribution.
With respect to the points on which the judgment of the district court is challenged we conclude:
(1) That the United States Series E savings bonds were co-owned by George Berzel and Mary Berzel with right of survivorship and that upon the death of George Berzel the entire interest in the bonds passed to Mary Berzel and no part thereof became a part of the estate for purposes of distribution;
(2) That Mary Berzel was the depositor and sole owner of the savings account and that George Berzel had no interest therein;
(3) That one-half of the checking account was properly inventoried for tax purposes and that the tax thereon was legally paid by the executrix but on distribution of the estate that tax is to be charged to Mary Berzel;
(4) That the order of the county court allowing maintenance to the widow was not included in the notice of appeal and was not reviewable by the district court nor is it reviewable in this court;
(5) That the fee of the executrix is determined to be the mandatory amount provided by statute for an estate of fifty thousand dollars being $1,080 plus reasonable compensation based upon the balance of the estate in the amount of $1,000, making her total compensation $2,080;
(6) The reasonable attorney's fees for probating the estate are determined to be $4,040.92. The additional sum of $1,700 claimed by the attorney as commissions on the sale of real estate is disallowed;
(7) The sum of $1,000 paid to Elizabeth Breitschafter was an unwarranted payment and must be accounted for by the executrix.
The case is remanded to the district court for modification of the judgment to conform to this opinion and as so modified it is affirmed.
SATHRE, C. J., and MORRIS, STRUTZ, BURKE and TEIGEN, JJ., concur.