GREGORY, APPELLANT, *v.* HARPER ET AL., APPELLEES.

(No. CA 75-8—Decided December 18, 1975.)

*Messrs. Harkins & Reckless,* for appellant.

*Mr. R. L. Brubaker,* for appellee Mary J. (Gregory) Harper.

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Michael W. Donaldson,* for appellee First Federal Savings & Loan Association of Washington Court House.

McBRIDE, J. This appeal is from the sustaining of a motion to dismiss the third cause of action in a complaint filed in the Court of Common Pleas of Fayette County. The case was commenced by the widow of Vollie C. Gregory to recover funds paid out by First Federal Savings and Loan Association to Mary J. Harper, a daughter of the deceased, pursuant to a joint and survivorship contract.

Not involved here is the action of the trial court denying a motion by plaintiff for a summary judgment against the daughter, who withdrew the balance in the

savings account. The question whether the widow or the daughter is the true owner of the savings is not presently before this court. This appeal relates to a claim of further liability of the savings association to the widow and sole heir under the will of the deceased for the payment which plaintiff claims was not lawfully delivered to the daughter.

Attached to the complaint we find copies of ledger cards and a copy of a standard joint and survivorship contract. These indicate that the account was opened by Vollie C. Gregory with an initial deposit of $5,030.39 on May 2, 1959.

Page 7 of Exhibit A, attached to the complaint, is the joint account contract, dated August 27, 1960, and signed by Vollie C. Gregory and by his daughter. This contract directed the association to act "without further inquiry" on directions signed by either party, whether the other person be living or dead. It authorized payment in whole or in part to any one of the undersigned, who shall first act, and that such payment shall be a valid and sufficient release and discharge of the association.

Deposits continued, necessitating additional ledger cards. The cards for deposits commencing April 14, 1962, and thereafter carry both names as the owners of the account, under which appears a typed notation: "Withdrawals by Vollie C. Gregory only." This notation is not dated and not signed or endorsed by anyone. All ledger cards carry both names as an "or" account. Exhibits A-1, A-3 and A-5, attached to the complaint are marked "over," suggesting that both sides of the cards were used, resulting in six photographs for three cards.

The complaint alleges that after the death of Vollie C. Gregory, Mary J. Harper wrongfully withdrew a sum in excess of $19,492.92 in violation of the rights of the plaintiff under the will of the decedent. In the second cause of action, plaintiff denies that Vollie C. Gregory created a joint and survivorship account and asserts that the assets belong to the estate.

In the third cause of action, plaintiff contends that the

savings association wrongfully permitted Mary J. Harper to obtain possession of the money. Plaintiff seeks a judgment against the savings association. It is this third cause that is involved in this appeal.

The savings association filed a motion under Civil Rule 12(B)(6) to dismiss the third cause of action on the ground that it failed to state a claim for relief.

Other proceedings for admissions and discovery went forward on plaintiff's motion for summary judgment; however, facts therein developed may not be considered here. Although Civil Rule 12(B) permits a motion to dismiss to develop into a summary judgment proceeding under Civil Rule 56, nothing in the record suggests that this was done as to the motion of the savings association for dismissal on the pleading. The entry of the trial court dismissing the complaint points out that the matter was heard upon the arguments and briefs and that the decision was upon a failure of the complaint to state a claim upon which relief can be granted. The exhibits containing the agreement and the ledger cards are a part of the complaint. Both parties relied upon these records in their presentation to the trial court and again before this court.

It is undisputed from the pleading and its exhibits that Vollie C. Gregory had a savings account in his own name, and that on August 27, 1960, he signed a joint and survivorship contract with the association and with his daughter. This contract formally gave his daughter not only survivorship rights but also full, present interest with the right to withdraw the balance. There is no allegation that this contract was terminated or canceled. The complaint merely states that the account was held out for many years as being a joint and survivorship account.

Plaintiff relies upon the memorandum written by someone, unknown, upon the ledger card, which states: "Withdrawals by Vollie C. Gregory only." The origin and authority for this notation without the signature of either owner is not alleged.

The language of the notation is vague. It may be construed to mean several things relating either to the cur-

rent history of the account or, as the plaintiff argues, to its future ownership. It is inconsistent with the joint contract; however, there is no allegation that the decedent took steps to amend, cancel or terminate the contract with the bank.

Plaintiff argues that the contract between the parties includes all records of the account, thereby incorporating the unsigned notation on the ledger as part of the agreement between the parties. As suggested in oral argument, there are many definitions of an account, depending upon the circumstances in which it is used. It is a generic word implying the existence of a series of transactions in the nature of debits and credits for money or other things as a result of either a contract or a fiduciary relationship. Every account arises out of either a contract or a relationship. The account itself is evidence by one party of the daily operation through debits and credits of the transactions between the parties. However, it is the contract or understanding, express or implied, between the parties that determines the nature and character of the undertaking as well as the liability of the parties. The contract controls the rights and liabilities, not the recording of the activities that reflect its execution. A play on the various meanings of the word "account" cannot change the contract that gave birth to the debits and credits.

The heading on a ledger card is designed for identification. It is similar to the caption on a pleading. It serves no other purpose than identification. The careless habit of changing headings or captions on ledger cards without authority to do so or without a new contract is a source of considerable litigation. The confusion that results justifies the practice of financial institutions of requiring changes of ownership or of the agreement to be made by a new contract with new signatures and by the closing of the old account. The transition to computers for recording debits and credits may reduce or eliminate problems that develop from marking up ledger cards.

R. C. 1151.19 provides, in part:

"When * * * deposits are made to the joint account of

two or more persons * * * with a joint order to the association that such deposits or any part thereof are to be payable on the order of any of such joint depositors, and to continue to be so payable notwithstanding the death or incapacity of one or more of the persons making them, such account shall be payable to any of such survivors or order notwithstanding such death or incapacity. *No recovery shall be had against such association for amounts so paid and charged to such account."* (Emphasis added.)

The inclusion of the joint and survivorship contract in the complaint establishes the conditions necessary for the effectiveness of R. C. 1151.19. The contract is clear and unambiguous, requiring no construction or interpretation. *Slife* v. *Kundtz Properties* (1974), 40 Ohio App. 2d 179. The allegation that the decedent did not do what was necessary to create a present interest in a joint account is a conclusion dispelled by the written agreement, at least to the extent of any liability on the part of the savings association. There can be no doubt that the decedent created a present, equal, joint and vested interest in his co-signer in this account. *Cleveland Trust Co.* v. *Scobie* (1926), 114 Ohio St. 241.

Under the joint contract, either party had a present right to withdraw the entire balance and close out the account. Neither party had a right to withdraw or to change the contract other than on their written order. Upon a written order, the association was "authorized to act *without further inquiry* in accordance with writing bearing any such signature * * *." There is in the complaint no allegation of a written order by anyone other than that of the survivor, who closed the account. Under the allegations, there is no basis to assert either a modification or cancellation of the joint depository agreement so as to waive either R. C. 1151.19 or the provisions of the joint contract to which the association was a party. As held in *Oleff* v. *Hodapp* (1935), 129 Ohio St. 432, a mere expression of an intention to nullify the written contract is not effective unless the divestiture is likewise in writing. This is particularly true where the joint contract expressly provides for

the method by which the association may be released or discharged. The obligations of association as the depository continues under the agreement until it is discharged by "such payment or delivery or a receipt or acquittance *signed by any one of the undersigned * * *.*"

Instructions not reduced to writing and not signed do not change the obligations of the savings association, or the conditions provided in the contract for its protection.

Similar oral instructions with unsigned notations on the ledger sheets appear in *In re Estate of Voegeli* (1959), 108 Ohio App. 371. The court held that oral testimony to contradict the clear and unambiguous written expression of intention on the part of the deceased is incompetent. This case arose on exceptions to the inventory and did not involve the depository or the protection afforded it by R. C. 1151.19.

R. C. 1151.19 does not involve the rights of the joint owners among themselves. This statute was enacted solely to protect a financial institution when it acts pursuant to its contract. *In re Webb* (1969), 18 Ohio App. 2d 287, 300. Regardless of the "realities of ownership" or the ultimate decision between the contract survivor and the estate, a savings association has an immunity if it pays the survivor pursuant to its agreement. *Eger* v. *Eger* (1974), 39 Ohio App. 2d 14; *Jones* v. *Neu* (1958), 106 Ohio App. 161. The association has no right to pay anyone else.

Plaintiff cites *Eger* v. *Eger,* a declaratory judgment action between the parties who had conflicting claims by way of contract and inheritance. The savings association was not a party and R. C. 1151.19 had no application. In *Benson* v. *Harmon* (1974), 39 Ohio App. 2d 92, a controversy arose between the survivor and the heirs as to the owner of the funds. The question was whether the survivorship feature was enforceable because of a limitation upon the right of the survivor to withdraw funds during the lifetime of the other party who provided the funds for the account. Again, the depository bank was not a party and the effect of the controversy upon the depository was

not an issue. These cases may be helpful on other as yet unresolved questions in this case; however, they do not approach the problem here. The existence of a controversy over ownership is the very reason for the enactment of R. C. 1151.19 and for the immunity it provides upon payment to the contract survivor.

The fine motives which prompt people to sign such joint and surivorship agreements often dissolve into quarrels and disenchantment after the death of one of the parties. It is no surprise that the legislature found it necessary to spell out the duties of the savings association and to provide immunity when it carried out its contractual responsibility. If a loss occurs due to conflicting claims of ownership, that loss should be borne by those who made it possible and not by other depositors in the savings association. The uncertainty of the ultimate outcome of litigation over ownership is the precise risk against which the legislature has provided immunity to savings associations.

Despite the volume of cases involving the realities of ownership of joint and survivorship accounts, not one has been reported and not one has been found in which a financial institution was considered liable when it followed the terms of its signed contract and earned the immunity granted in R. C. 1151.19, by making payment to the survivor.

A motion to dismiss is proper where the complaint alleges that a savings association delivered funds in a joint account to the survivor pursuant to a joint and survivorship contract. No recovery may be had against such association for the funds so paid. R. C. 1151.19.

The judgment sustaining the motion of the defendant, First Federal Savings and Loan Association, is affirmed.

*Judgment affirmed.*

KERNS, P. J., and WHITESIDE, J., concur.

WHITESIDE, J., of the Tenth Appellate District, sitting by designation in the Second Appellate District.