[File No. 6348.]

FIRST NATIONAL BANK & TRUST COMPANY, of Fargo, a Corporation, Administrator of the Estate of William John Carlisle, Deceased, Appellant, v. SARAH EMELINE GREEN, Respondent.

(262 N. W. 596.)

Opinion filed September 17, 1935.   Rehearing denied October 18, 1935.

*Lawrence, Murphy, Fuller & Powers and W. J. Kelly,* for appellant.

*Conmy, Young & Conmy,* for respondent.

162

NUESSLE, J. This is an action to determine the ownership of a deposit in the Northwestern Mutual Savings & Loan Association.

William J. Carlisle was a native of Canada. Many years ago he came to Fargo, where he resided until his death. He accumulated considerable property. He had a number of brothers and sisters. His wife died some time prior to December, 1931. He was old and sick and alone so he arranged with the defendant Mrs. Green, one of his sisters, that she should come to Fargo and live with him until such time as he could make suitable disposition of his household effects and then he would return with her to her home in Canada, there to pass the rest of his days. In accordance with this arrangement Mrs. Green came to Fargo in December, 1931. Prior to the death of his wife, Mr. Carlisle and she had had a joint account (with right of survivorship) in the Northwestern Mutual Savings & Loan Association. On February 5, he took his sister Mrs. Green to the office of the association, drew out the balance that remained in the joint account that he and his wife had had, and redeposited it to the credit of William J. Carlisle or Sarah E. Green. At the same time he and Mrs. Green signed and filed the following statements which were printed on the signature card controlling the account required in such cases of depositors and shareholders in the loan association, to wit: ... .

"The undersigned hereby applies for membership in the Northwestern Mutual Savings and Loan Association and subscribes for Optional Payment Shares (Class 'E') subject to the by-laws, rules and regulations governing the same, and any alterations, additions or amendments thereto.

"We jointly and severally covenant with the Northwestern Mutual Savings and Loan Association, that either of the undersigned or survivor thereof, may receipt for and accept payment for any or all shares standing in our name, and do hereby constitute and appoint (here follows the designation of attorneys in fact authorized to vote such stock)."

"We the undersigned do hereby assign and transfer, one to the other in joint tenancy, with the right of survivorship, all Optional Payment Shares (Class 'E') of the Northwestern Mutual Savings and Loan Association, of Fargo, N. D., now or hereafter standing to our credit on the books of said association, together with all moneys now, or hereafter, deposited in said account, and each constitutes the other his or her attorney in fact to withdraw any share or any money deposited in said account."

The ledger card made up by the bank from the deposit slip and the signature card, read: "Joint owners, payable to either, before or after the death of the other."

Thereafter, and on the same day, Carlisle made a further deposit of $75 to such account. He received a passbook made out to himself and Mrs. Green which he retained in his possession. He told Mrs. Green that he had made this deposit to their joint account and that she was to be the owner of it after his death. The treasurer of the association testified that he talked with Mr. Carlisle at the time this deposit was made. That the deposit was in a joint ownership account. That either Carlisle or Mrs. Green might draw the whole or any part thereof and that on the death of either the survivor would have whatever remained in the account. He further testified that Carlisle was fully conversant with the effect of what he was doing and intended to effectuate that identical thing. "It was absolutely a clear cut understanding at Mr. Carlisle's direction. The entire transaction was at his instruction." Thereafter and on February 20, Carlisle died intestate. He had made no withdrawals from the account; neither had Mrs. Green. He had

made no deposits after February 5, and Mrs. Green had never made any. And it may be that Mrs. Green did not know that she could draw on this deposit prior to his death. After his death, however, she deposited very substantial sums in the account and still later withdrew the whole of the deposit, both that which was deposited prior to Carlisle's death and that which she had subsequently deposited.

The plaintiff is the administrator of the estate of Carlisle. Plaintiff claims the money paid into the loan association is part of Carlisle's estate and seeks to recover the amount thereof from Mrs. Green.

It does not clearly appear from the record just what the effect of the transaction with the savings and loan association was. Apparently shares of some sort were subscribed for and possibly issued, but the record is silent regarding this matter except as appears from the card signed by Carlisle and Mrs. Green above set out. It does appear, however, that whatever the nature of the transaction with the association, the so-called depositors were entitled to interest at stated intervals and might withdraw the money deposited or paid in by them.

There is a great diversity of holding in the cases respecting the rights of the parties in whose names joint deposits in savings or other banks are made. This is particularly so as respects the rights of the party who contributes none of the money constituting the deposit where the other party who does contribute dies. Some of the cases have held such deposits effective or ineffective as the case may be to constitute gifts causa mortis, gifts inter vivos, or as creating trusts, some have held them to constitute voluntary bestowments in joint tenancy, some to be merely abortive attempts at testamentary disposition, and some to be contractual arrangements for the convenience of the depositor without benefit to the other party. See Denigan v. San Francisco Sav. Union, 127 Cal. 142, 59 P. 390, 78 Am. St. Rep. 35; Erwin v. Felter, 283 Ill. 36, 119 N. E. 926, L.R.A.1918E, 776; Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543; Deal v. Merchants & M. Sav. Bank (Parrish v. Merchants & Mechanics' Sav. Bank) 120 Va. 297, 91 S. E. 135, L.R.A.1917C, 548; Moskowitz v. Marrow, 251 N. Y. 380, 167 N. E. 506, 66 A.L.R. 870; Cleveland Trust Co. v. Scobie, 114 Ohio St. 241, 151 N. E. 373, 48 A.L.R. 182; Re Hodgson, 50 Ont. L. Rep. 531, 67 D. L. R. 252; and cases cited in the several notes.

In the instant case the defendant contended, and the trial court so held, that it clearly appeared that when the deposit was made Carlisle intended to and did make a completed gift to Mrs. Green resulting in a joint tenancy within the terms of § 5262, Comp. Laws 1913; that, incident to this joint tenancy, was the right of survivorship; that either Carlisle or Mrs. Green might have withdrawn any part or the whole of the deposit during the lifetime of both and on the death of Carlisle she, as survivor, took the whole. On the other hand, the plaintiff contends that there was no completed gift or trust by reason of the deposit; that title to the deposit never vested in Mrs. Green so that on Carlisle's death whatever remained in the joint account became a part of his estate.

A completed gift inter vivos is a transfer of property made voluntarily and without consideration effective immediately and irrevocably on an unconditional delivery, actual or symbolical, having regard to the circumstances and the nature of the property. Article 3, chapter 48 of the Civil Code, Comp. Laws 1913, §§ 5538–5545; Arnegaard v. Arnegaard, 7 N. D. 475, 75 N. W. 797, 41 L.R.A. 258; Luther v. Hunter, 7 N. D. 544, 75 N. W. 916; O'Brien v. O'Brien, 19 N. D. 713, 125 N. W. 307; Magoffin v. Watros, 45 N. D. 406, 178 N. W. 134; Ramsdell v. Warner, 48 N. D. 96, 183 N. W. 281; Reel v. Hansboro State Bank, 52 N. D. 182, 201 N. W. 861; Rosenau v. Merchants Nat. Bank, 56 N. D. 123, 216 N. W. 335, 60 A.L.R. 1040; McGillivray v. First Nat. Bank, 56 N. D. 152, 217 N. W. 150; Perry v. Erdelt, 59 N. D. 741, 231 N. W. 888. The cases of Reel v. Hansboro State Bank, 52 N. D. 182, 201 N. W. 861, supra, and McGillivray v. First Nat. Bank, 56 N. D. 152, 217 N. W. 150, supra, are similar to the instant case in that both grow out of bank deposits. In the Reel Case, through oversight, (the intention being to have the same made payable to Reel, the depositor retaining the right to the interest) a certificate of deposit was made payable to the depositor, the decedent, and we held that there was no gift but that a trust was established in Reel's favor. In the McGillivray Case the decedent procured the issuance of certain certificates of deposit payable to herself or Montague. These certificates were, however, retained in her possession. We held that there was no completed gift since she had at all times retained possession

of the certificates and there was no evidence (other than that said certificates were made payable to herself or Montague) to establish that she intended to divest herself of the use or absolute control of the moneys deposited. But it seems to us that the deposit in the instant case satisfies all the requirements necessary to constitute a gift inter vivos. There can be no question as to the intent of Carlisle when he entered into the transaction with the savings and loan association. He wished and intended to make the money deposited subject to the use and disposition of Mrs. Green equally with himself during the time that both of them lived, and in the event he should precede her in death that she, as survivor, should take all that might at that time remain in the account. He transferred the money to the account under a contract with the association that it should be so held and so disposed of. The association then became the debtor of Carlisle and Mrs. Green subject to the terms of such contract. The right thus given to Mrs. Green to draw on the account was immediate, absolute and irrevocable. Though Carlisle might have withdrawn all of the account, she also might have done so. If he withdrew the account the right might have been made worthless, but for what it was worth it was a completed gift. See, in this connection, Kennedy v. McMurray, 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515; Reder v. Reder, 312 Ill. 209, 143 N. E. 418; McLeod v. Hennepin County Sav. Bank, 145 Minn. 299, 176 N. W. 987; Re Johnson, 116 Neb. 686, 218 N. W. 739; Burns v. Nolette, 83 N. H. 489, 144 A. 848, 67 A.L.R. 1051; Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543, supra.

The appellant cites and relies upon the cases of McGillivray v. First Nat. Bank, 56 N. D. 152, 217 N. W. 150, supra, and Denigan v. San Francisco Sav. Union, 127 Cal. 142, 59 P. 390, 78 Am. St. Rep. 35, supra. As we stated above, in the McGillivray Case there was nothing said or done by Mrs. Street which indicated any intention on her part to divest herself of the use or absolute control of the deposits other than could be inferred from the fact that the certificates were made payable to herself or Montague. And a reading of the Denigan Case discloses that the holding there was predicated upon the same lack of evidence of intention on the part of the depositor to divest herself of such use and control. The later California cases, Kennedy v. McMurray, 169

Cal. 287, 146 P. 647, supra, and Conneally v. San Francisco Sav. & L. Soc. 70 Cal. App. 180, 232 P. 755, on the facts and by their reasoning support the position of the defendant in the instant case. The court in those cases refers to the Denigan Case and clearly distinguishes it on the facts.

Since we hold that in the instant case there was a completed gift by Carlisle to Mrs. Green, it is immaterial as to whether a joint tenancy within the contemplation of the statute, section 5262, supra, was created by Carlisle when he made the deposit here involved. If there was a joint tenancy there was a right of survivorship, whether that right was expressly declared or not. Such a right is incident to the status. But clearly there was an expressed intent on the part of Carlisle and of Mrs. Green that there should be a right of survivorship. And the contractual obligation assumed by the association was to this effect. Since this is so, whether the status of the parties created by the transaction was that of joint tenancy or of tenancy in common (see Comp. Laws 1913, § 5264), is immaterial. There is no valid reason nor any rule of law that forbids the creation of the right of survivorship in tenants in common. See Burns v. Nolette, 83 N. H. 489, 144 A. 848, 67 A.L.R. 1051, supra. Here, whether their relationship was that of joint tenants or of tenants in common, or merely that of parties to a contractual relation, to give effect to the right of survivorship is to carry out the declared purpose and intent of the parties pursuant to which they entered into the contract of subscription and deposit with the savings and loan association.

Judgment affirmed.

Burke, Ch. J., and Morris, Christianson and Burr, JJ., concur.