[File No. 7348]

ESTELLA M. LITTLEJOHN, Appellant, v. COUNTY JUDGE, PEMBINA COUNTY, and THE NORTH DAKOTA STATE TAX COMMISSIONER, Respondents.

(58 NW2d 279, 39 ALR2d 690)

Opinion filed March 19, 1953. Rehearing denied May 7, 1953.

*Mark J. Clayburgh,* for appellant.

*Charles Simon,* Estate Tax Attorney, and *Kenneth M. Jakes,* Assistant Attorney General, and *Fred S. Snowfield,* State's Attorney, Pembina County, for respondents.

MORRIS, Ch. J. This is an appeal from an order of the District Court of Pembina County entered April 30, 1952, affirming two orders of the County Court of Pembina County, pertaining to the taxability, as part of the estate of James Littlejohn, deceased, of an interest in certain United States Savings Bonds. Involved herein are two $100.00 Series E Bonds issued December 1942, registered in the names of James Littlejohn or Estella Littlejohn; one $500.00 Series E Bond issued September 1947, registered in the names of James Littlejohn or Estella Mac Littlejohn; and one $1,000.00 Series G Bond issued July 10, 1944, registered in the names of James Littlejohn or Estella Mae Littlejohn. The County Court of Pembina County, by order dated November 19, 1951, held that one half of the appraised value of these bonds was subject to taxation as a part of the estate of the deceased. The county court, by another order dated December 14, 1951, denied to the appellant, Estella M. Littlejohn, the right to a refund of tax paid under protest and pursuant to the above order in the amount of $16.48. The facts were stipulated or are undisputed.

James Littlejohn died April 23, 1951, at about eighty years of age, leaving as heirs and next of kin his aged wife and two adult sons, and a daughter, who is the appellant in this action. The daughter for some years prior to his death lived with the

decedent and his wife as a part of their household. The stipula-
tion states:

"That the above described bonds were purchased by the de-
cedent, James Littlejohn; that said bonds were placed in safety
deposit box number 3,616, Grafton National Bank, Grafton,
North Dakota; that said safety deposit box was registered in the
sole name of Estella Littlejohn; that the decedent gave posses-
sion of said bonds to Estella Littlejohn and as such they were
for her use should she ever need them for her support."

The daughter testified by a written statement under oath,
stipulated to be the equivalent of a deposition, as follows:

"That said bonds were placed in Safety Deposit Box 3,616,
Grafton National Bank, Grafton, North Dakota; that said Safety
Deposit Box was registered in my sole name; that at no time
did my father ever infer that these bonds were to be mine only
upon his death; that actually he gave me possession of them
and I placed them in my Safety Deposit Box and I assumed,
as he did, that should I ever need them, they were there for
my use and my use only."

The court filed a voluminous memorandum opinion to which
reference is made in the order appealed from. In this memoran-
dum the court stated:

"It is agreed that these bonds were purchased by the decedent,
James Littlejohn, who at the time of purchase or shortly there-
after delivered them to his daughter, Estella, who placed and
kept said bonds in her individual safety deposit box which was
registered in her name alone and that said bonds remained in
appellant's possession, as aforesaid, up to and at the time of
the death of James Littlejohn."

This statement is not questioned by the respondent.

The appeal from the county court to the district court is on
a question of law. Section 30-2608 NDRC 1943. See also
Mongeon v. Burkebile, ante 234, 55 NW2d 445. That question,
broadly stated and as argued to this court, is whether, under the
facts here presented, the county court erred in determining that
any part of or interest in the bonds in question became a part
of the taxable estate of the decedent.

The position of the state tax commissioner is that the appel-

lant and the deceased, being named in the bonds as co-owners with right of survivorship, became joint tenants and that one half of the value of the bonds, as of the date of the death of the decedent, became a part of his gross estate and subject to the estate tax under the provisions of Section 57–3706 NDRC 1943, which provides:

"The gross estate of a decedent shall include the value of interests in property held as a joint tenant, or deposited in banks or other institutions in the joint names of the decedent and any other person, and payable to either or the survivor. In any such case the value of the decedent's interest shall be determined by dividing the value of the entire property by the number of joint tenants, joint depositors, or persons interested therein."

The law in effect on the date of death of the decedent, Chapter 57–3702 NDRC 1949 Supp., provided that the value of the gross estate of a resident decedent should be determined by including:

"1. All real property within this State;

"2. All tangible personal property, except that which has an actual situs without this State;

"3. All intangible personal property wherever located;

"4. The net proceeds of all life insurance carried by the decedent at the time of his death in excess of $25,000.00, whether made payable to his estate, the widow, heirs, individuals, or trusts."

The appellant urges two propositions in support of her contention that no part of the bonds is taxable. She first argues that the terms of the bonds, the federal law and the regulations under which they were issued constitute a contract between the United States and the purchasers of the bonds, and that the rights of the surviving co-owner arise solely from this contract and not from the law of succession and that the state may not interfere with the contract by taxing the transfer of the bonds or any interest therein. The second ground urged by the appellant is that the facts disclosed by this record show that the transactions and events which resulted in the appellant's ownership of the bonds establish that the transfer of ownership to the appellant is not taxable under the laws of this state.

Savings bonds of the series involved in this case may be registered in the names of two persons as co-owners and, during the lives of both co-owners, a bond so issued will be paid to either co-owner upon his request without the signature of the other. If either co-owner dies while the bond remains a valid obligation, the surviving co-owner will be recognized as the sole and absolute owner of the bond and is entitled to payment or resissue as though the bond were registered in his name alone. 1949 Edition, Code of Federal Regulations, Chapter 2, Fiscal Service, Section 315.45. Under the same chapter of the Code of Federal Regulations, it is provided that Series E and G Bonds "shall be subject to estate, inheritance, gift, or other excise taxes, whether Federal or State, . . . ." (Sections 316.2 and 318.2)

The appellant's first contention is supported by the majority opinion in Succession of Tanner, a decision of the Court of Appeal of Louisiana, First Circuit, appearing in 24 So2d 642. The Supreme Court of Louisiana reached the opposite conclusion in the later case of Succession of Raborn, 210 La 1033, 29 So2d 53, in which it was pointed out that under the regulations of the United States Treasury Department, United States Savings Bonds, Series E and G, were made subject to estate, inheritance, gift, or other excise taxes by the federal and state governments and that no consideration was given to this provision in the Tanner case.

Questions relating to the levy of estate and inheritance taxes on the transfer of United States Savings Bonds have confronted the appellate courts of other states in cases which we will briefly discuss.

In Hallett v. Bailey, 143 Me 1, 54 Atl2d 533, War Savings Bonds and Treasury Bonds of the United States of America had been made payable to the decedent, his wife, or the survivor. It was contended that to subject these bonds to the Maine inheritance tax would impair the contract made between the decedent and the United States. The court pointed out that the regulations of the Treasury Department provided that the bonds were subject to inheritance taxes. It was then stated that the inheritance tax law of Maine reached all property passing by survivorship in any form of joint ownership and a petition for the

abatement of the tax that had been assessed by the Tax Commissioner of the State of Maine was denied. To the same effect is Gould v. Johnson, 146 Me 366, 82 Atl2d 88.

Watkins v. Shaw, 234 NC 96, 65 SE2d 881, involved an action to recover from the Commissioner of Revenue of the State of North Carolina a sum paid under protest as inheritance taxes assessed on the transfer to the survivor of certain United States Savings Bonds, Series E, purchased by the decedent and made payable to the deceased or his wife as co-owners. The bonds were kept in a place accessible to both the decedent and his wife. After pointing out that there was no claim that there was an inter vivos gift of the bonds by the decedent to his wife, the court said:

"Therefore, the question for us to determine is simply this: Should the cash value of United States Savings Bonds, Series E, issued and made payable to the purchaser or his wife, as co-owners, be included in the estate of the purchaser for inheritance tax purposes, where the purchaser expended his own funds in the acquisition of the bonds and kept them in a place accessible to both the purchaser and his wife, but made no *inter vivos* gift of the bonds to his wife? We think this question must be answered in the affirmative."

At this point it is clear to us that United States Savings Bonds, Series E and G, are, by the terms of the regulations under which they are issued, subject to the operation of the estate tax law of the state in so far as that law is applicable under the facts presented in any given instance.

We now come to the appellant's second proposition that, under the facts here presented, there is no taxable transaction which falls within the terms of the statute. In this connection we bear in mind that the bonds in question, although purchased with funds belonging to the decedent, were, at the time of purchase or shortly thereafter, by him placed in the possession of his daughter, the co-owner named in the bonds, who kept them at all times in her exclusive possession in a place inaccessible to the decedent.

We find it helpful to continue with our examination of authority from other jurisdictions. In Mitchell v. Carson, 186

Tenn 228, 209 SW2d 20, the decedent had purchased United States Savings Bonds, some of which were payable to her nephews and nieces at her death. Others were payable to the decedent or the same nephews and nieces. In holding that the bonds were subject to state inheritance tax, the court pointed out that the decedent owned an interest in the bonds, which, at her option, was determinable only by her death and that by reason of the retention of possession by the decedent the possession and enjoyment of the bonds by the beneficiaries took effect only upon her death. Thus the court concluded that the transaction was a transfer taking effect in possession, ownership, and enjoyment at the death of the purchaser of the bonds and they were therefore taxable under the Tennessee inheritance tax law.

In the case of In re Myers' Estate, 359 Pa 577, 60 Atl2d 50, the question presented was the right of the state to impose a transfer inheritance tax on the full cash value of United States Savings Bonds, Series E, purchased by the decedent and issued in his name and that of his sister, as co-owner. The sister contended that only one half of the cash value of the bonds was taxable since she and her brother were joint tenants and co-owners. The court pointed out that, although the bonds by their terms were legally redeemable upon their presentation by either the deceased or his sister, this right was incapable of performance since the deceased retained exclusive possession and no valid gift inter vivos of any interest in the bonds took place. The court then stated:

"Both appellant's possession and enjoyment of the bonds in question were postponed until the donor's death since no previous access to them was made available to her. To permit a transfer inheritance tax exemption on all government bonds issued in the co-ownership form without examining the circumstances of each case, would encourage the practice of investing one's estate in such bonds and registering them in joint names for the purpose of circumventing the payment of a legitimate exaction."

In the case of In re Rummel's Estate, 74 SD 131, 49 NW 2d 380, the deceased had purchased United States Bonds, some of which were payable to the deceased or his sister, and others

were payable to the deceased or a brother. They were purchased with the decedent's funds and remained in his exclusive possession until death. The court points out that the deceased had the right to cash the bonds at any time without consent of the co-owners who had no legal claim to possession. which they could assert prior to death of the purchaser. It was held that the bonds represented transactions that resulted in a transfer of property "intended to take effect in possession or enjoyment at or after" the death of the donor and that the bonds were taxable as a part of the estate of the decedent. It should be noted that in these cases the possession of the bonds was an important factor in the decision. In each case the decedent purchased the bonds with his own funds and kept. the bonds in his possession until his death. All of the cases hold that the bonds were taxable at least in part. In the case before us the facts with respect to possession are reversed. The decedent, who was the purchaser, transferred exclusive possession to the person named in the bonds as co-owner. Under the terms of the bonds and the regulations under which they were purchased, the co-owner had a right to cash the bonds at any time without the consent of the decedent. Her right to possession and enjoyment of the bonds, including the right to cash them, was immediate, complete, and exclusive.

We find nothing in the federal statutes or regulations under which the bonds were issued which prohibits a gift inter vivos as between co-owners named in a bond.

"A completed gift inter vivos is a transfer of property made voluntarily and without consideration, effective immediately and irrevocably on an unconditional delivery, actual or symbolical, having regard to the circumstances and the nature of the property." First National Bank & Trust Co. v. Green, 66 ND 160, 262 NW 596.

The Supreme Court of Montana has. thrown helpful light on our problem as a result of two comparatively recent decisions. In State Board of Equalization v. Cole, 122 Mont 9, 195 Pac2d 989, the factual situation was about the same as that presented in the cases we have discussed. The decedent had purchased United States Savings Bonds, Series G, payable to the decedent

and a co-owner. The bonds were kept in the decedent's safety deposit box to which none of the co-owners had access. The district court held that one half of the value of the bonds was taxable under the state inheritance tax laws. The majority of the supreme court held that the co-owners or alternate payees had no rights whatsoever as long as the bonds were in the possession of the decedent and that the bonds were taxable under the inheritance tax laws at their full market value.

In re Brown's Estate, 122 Mont 451, 206 Pac2d 816, discloses that a mother authorized her daughter to draw money from the bank and purchase United States Savings Bonds and register them in the name of the mother and daughter, as co-owners. The bonds were deposited in a box held jointly with the mother. The majority of the court reached the conclusion that there was no gift inter vivos and that on the death of the mother the full value of the bonds was subject to inheritance tax. Two members of the court thought that the tax should be assessed against one half of the value of the bonds. The majority of the court in commenting on the case of State Board of Equalization v. Cole, supra, made these statements which are of interest to us under the facts presented in this case:

"We did indicate, however, that if there had been an actual delivery of the bonds after such registration, a completed gift would been made."
and

"We hold that if there has been an actual delivery of the bonds themselves it constitutes a present inter vivos gift of the bonds."

We reach the conclusion that the bonds in question might properly be made the subject of a completed gift inter vivos as between the co-owners thereof. This is consistent with the contract with the United States of America under which they were issued that permits either co-owner to apply for and receive payment of the value of the bonds without consent of the other. The bonds were delivered voluntarily and unconditionally by the deceased to his daughter over three years prior to his death. From the time of delivery the decedent had no right to or interest in the bonds which he might legally enforce. No interest therein passed to the appellant upon his

death, his interest having vested in her upon the completion of the gift. Section 57–3701 NDRC 1943 imposes a tax upon a transfer of the net estate of every decedent. The bonds not being a part of the estate of the decedent and no interest in the bonds having passed to the appellant upon the death of the decedent, no estate tax can be imposed. The order of the district court appealed from is reversed and the case is remanded with instructions to the district court to enter appropriate orders reversing the orders of the county court from which the appeal to the district court was taken.

BURKE, SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.

MORRIS, Ch. J. (On petition for rehearing.) In a courteous and carefully prepared petition for rehearing the respondents question our determination that Series E and G Bonds payable to co-owners may be made the subject of a gift inter vivos between the co-owners and it is argued that such a determination is contrary to federal regulations, particularly Section 315.17 of the 1941 Supplement to the Code of Federal Regulations, which provides:

"The ownership of a savings bond or interest therein may be transferred or established through valid judical proceedings: *Provided, however,* That no such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon co-owners and beneficiaries."

As we read this and other federal regulations, when a bond of the co-owner type is issued, each co-owner becomes vested with a present interest in the bond, and the bond itself and the regulations confer the right of survivorship upon the co-owner. There is nothing in these regulations to prohibit the transfer from one co-owner to the other of his interest in the bond. It is true, of course, that such a transfer cannot in any way impair the right of the United States to discharge its obligation under the bond in the manner provided by the bond and regulations. By making payment to the survivor, but the preservation of that right in the government does not result

in the abrogation of the right of one co-owner to transfer to the other co-owner, by gift inter vivos or otherwise, his interest in jointly owned property and the transfer of such an interest by one co-owner to another is not a violation of the regulatory provisions prohibiting transfer of United States Savings Bonds.

This question, in a case coming to our attention since the filing of our former opinion, has been considered by the Supreme Court of Nebraska, In re Hendricksen's Estate, 156 Neb 463, 56 NW2d 711, in which it is said:

"The primary purpose of the Treasury Department regulations is to prevent the government from being involved in suits between claimants to government bonds. These Treasury Department regulations refer to the bonds themselves, providing protection to the government if its agents pay the named owner or co-owner. . . . It seems clear that the federal laws and regulations are not intended to interfere with the positive act of two co-owners of bonds by which one conveys her interest in them to the other."

We also find that the Supreme Court of Montana in a case more recent than those cited in our opinion has said:

"If the person who advanced the consideration for the purchase of the bonds relinquishes dominion and control over them, they are treated as a gift and taxed as a transfer in contemplation of death. After the expiration of the presumptive period and in the absence of proof to the contrary, the gift is an absolute inter vivor gift and not taxable. If there is no delivery of the bonds by the purchaser to the cotenant whose name appears thereon, the transfer is one to take effect at or after death and taxable as such." In re Marsh's Estate, 125 Mont 239, 234 Pac2d 459.

Our decision is in accord with these cases and is neither contrary to nor does it interfere with the regulations of the Treasury Department pertaining to the purchase, transfer, and payment of Series E and G Bonds. We adhere to our opinion as written.

GRIMSON, CHRISTIANSON, SATHRE and BURKE, JJ., concur.