Clarence SEABORN, Administrator, successor to Arthur D. Wolf, former Administrator of the Estate of Martin C. Fischer, Deceased, Plaintiff and Respondent,

v.

Josephine KAISER, Carl Kaiser, and Ella Nelson, Defendants and Appellants.

No. 8017.

Supreme Court of North Dakota.

Oct. 26, 1962.

Rehearing Denied Nov. 27, 1962.

Rittgers & Granner, Jamestown, for plaintiff and respondent.

Duffy & Haugland, Devils Lake, for defendants and appellants.

MORRIS, Judge.

Martin C. Fischer, a bachelor, died intestate at the age of 72 years on November 11, 1960, in a hospital in Jamestown, N. D. A sister, Josephine Kaiser, was appointed administrator of his estate. On December 21, 1960, she filed in the County Court of Stutsman County an inventory disclosing the assets of the estate as a 1954 Chevrolet automobile, value $360, and the sum of $636 cash in the hands of Joseph McGuire. The inventory also listed the following accounts declared to be held in joint tenancy with right of survivorship in the name of the decedent and Josephine Kaiser: (1) A savings account in the First Federal Savings & Loan Association of Jamestown in the amount of $4,000; (2) A checking account in the Foster County State Bank, Carrington, N. D., in the amount of $1,567.79. It was stated that these accounts were listed for inheritance tax purposes only. Another sister, Magdalena Nogosek, challenged the validity of the establishment of these accounts and the right of Josephine Kaiser to claim the moneys on deposit as survivor.

Josephine Kaiser was removed as administrator and Arthur D. Wolf appointed in her stead. The new administrator instituted this action against Josephine Kaiser, her husband Carl, and Ella Nelson, an unrelated businesswoman who it is claimed joined with the Kaisers in a plan or scheme to induce Fischer to place his money in joint accounts with Josephine Kaiser as his survivor. The trial court instructed the jury that the plaintiff claims that the deposits in the sum of $5,567.79 are the property of the estate and brings the action to recover the same as administrator. The jury rendered a verdict against the three defendants for the amount claimed. Judgment was entered on the verdict. The defendants made a motion for judgment notwithstanding the verdict or for a new trial. This motion was denied. The defendants appeal from the judgment and from the order of the district court denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

The sufficiency of the evidence to sustain the verdict of the jury is challenged on the appeal from the judgment and on the motion for judgment notwithstanding the verdict. The defendant Ella Nelson was called for cross-examination by the plaintiff. Her testimony discloses that she is engaged in the real estate, insurance and investment business in Jamestown, N. D. On July 14, 1960, the defendant Carl Kaiser called her to come down to the Kaiser home and told her that Martin Fischer wanted to see her. She went to the Kaiser home about seven o'clock P.M. and talked with Fischer, in the Kaiser dining room, in the presence of Carl Kaiser, where she drew an instrument referred to in the testimony as a will which Fischer signed. She said:

"I read the thing first and then he read it and then he signed it."

She signed it as a notary public and Carl Kaiser signed it as a witness. This instru-

ment was never presented for probate as a will. It reads as follows:

"Jamestown, N. D.
July 14, 1960

"My last will & testmonies
Dated July 14, 1960

"I want my sister Josephine Kaiser, of Jamestown, N. Dak. to take care of my property & money when I pass away.

"I want her to bury me at Kensal, North Dakota.

"I want her to pay all my burial expense & Hospital expense if any from my money if there is any left. If there is any money left it is to be left to Josephine Kaiser, of Jamestown, N. D.

"If I still have a car it is to be left to Josephine Kaiser to Dispose of & all of personal belongings.
MARTIN C. FISCHER
"Witness   CARL KAISER
"Appeared before me a Notary Public was Martin C. Fischer of Jamestown, N. D. and he acknowledged he signed the same.
ELLA NELSON   Notary Public
"Com. expires 2/19/1965
(SEAL)"

Miss Nelson also wrote a letter to the Foster County State Bank at Carrington, N. D., where Fischer had a checking account then amounting to $5,567.79. A carbon copy of this letter was introduced in evidence. It says:

"I want to have a joint Bank account with my sister Josephine Kaiser of Jamestown, N. Dak. I am enclosing a check signed by us as to how we want it signed.
MARTIN C. FISCHER

"Please send me a pad of check blanks. M. F."

The witness does not know whether the original letter was mailed to the bank or not. No check or check blank was signed, but the signatures of Fischer and Mrs. Kaiser were put on a slip of paper.

In later testimony on direct examination, Miss Nelson testified extensively regarding the circumstances that led up to and the facts regarding her participation in the transaction. She stated that about a week before she was called to the Kaiser home, Fischer came to her office and talked about insurance on his automobile. He also told her that he had money in a bank at Carrington that was not drawing interest. She told him that he should have his money in a savings account where it would draw interest and suggested different places where he could get four per cent and three per cent interest.

Miss Nelson testified that when she came to the Kaiser home in response to the telephone call from Mr. Kaiser, she and Fischer sat at the dining room table and discussed in detail what he could do with his money, and that he brought up the subject of a will. She recommended that he see an attorney but he did not want to pay the charges. She then explained about a will. He wanted his sister Josephine to take care of the business when he passed away. As to the residue, she testified that he stated:

" 'If there is any money left it is to be left to Josephine Kaiser of Jamestown, N. D.' And that's way he wanted to leave it to her, because he didn't think he would have probably much if he was going to be sick, but whatever he had he wanted her because she took care of him, and that is up to her to decide if she wanted to give some to the other, she could do so, and he wanted to do so and she could do what she wants with it."

The transaction took until about 8:30 p. m. During the time of the interview Mrs. Kaiser was in the kitchen, Mr. Kaiser was in the dining room, but neither of them participated in the conversation, during the course of which Miss Nelson suggested the

First Federal Savings & Loan Association and the Gate City Building & Loan Association as places where he could put his money. The witness had never talked to either of the Kaisers about drawing a will or any other papers for Fischer.

On the morning of July 15, Mr. Fischer went to Miss Nelson's office and asked her to take him to a place to open a savings account. Mr. Kaiser was waiting across the street. The three of them went to the First Federal Savings & Loan Association where she introduced Kaiser and Fischer to Mr. Schaffer, an officer of the association. She told Schaffer she had brought him a customer who would like to open an account. Then she left. She was asked if during her visit with Fischer the evening before he appeared to understand the conversation, what she told him, and what was going on. Her reply was, "Yes. He was just as sensible as all of us here right now."

H. E. Schaffer, the assistant secretary of the savings and loan association, was called as a witness by the plaintiff. He testified that he was in charge of the office, that on July 15, 1960, Mr. Kaiser, Martin Fischer and Ella Nelson came in the bank. She introduced them and left. Fischer wanted to open up a savings account in the amount of $4,000. He wanted to know if it was safe and if he could withdraw it at any time. The transcript then shows the following:

"Q. * * * didn't she say it was a savings account in joint names with another person?

"A. No, she didn't.

"Q. When did you find that out?

"A. After I talked to Mr. Fischer.

"Q. And after Ella Nelson was gone?

"A. Right.

"Q. Nobody was there but yourself, Martin Fischer and Carl Kaiser?

"A. Right.

"Q. Did Carl Kaiser tell you the other name that they wanted in the account?

"A. No. Mr. Fischer did that.

*   *   *   *   *   *

"A. He said, 'I wanted to open up an account,' and I asked him if he wanted somebody else and he said Mrs. Josephine Kaiser."

Schaffer prepared a signature card for a joint account in the names of Fischer and Josephine Kaiser, which Fischer signed. Schaffer gave him the card to be taken out for the other signature. Later the card was brought back by Mr. Kaiser with the signature of Josephine Kaiser on it.

The transfer of $4,000 from the Foster County State Bank to the First Federal Savings & Loan Association was accomplished by a check made out in the handwriting of Mr. Schaffer and bearing the signature of Martin C. Fischer alone.

On December 19, 1960, Josephine Kaiser gave a check to her husband, Carl Kaiser, for the sum of $1,567.79, drawn on the Foster County State Bank, this sum being the balance remaining in the bank after the death of Martin C. Fischer. Carl Kaiser testified that he deposited this check to his wife's account in a Jamestown bank.

The trial court, in unchallenged instructions, instructed the jury at length with respect to undue influence, stating:

"'Undue influence' consists of (1) in the use, by one in whom a confidence is reposed by another or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) In taking an unfair advantage of another's weakness of mind; or (3) In taking a grossly oppressive and unfair advantage of another's necessities or distress."

He also defined "actual fraud" in the words of Section 9–03–08, NDCC. At the close of

his instructions on undue influence, the court said:

"You are instructed that a gift is a transfer of property made voluntarily and without consideration.

"It is a question for the jury to decide whether or not Martin C. Fischer knowingly and voluntarily made a gift of an interest in his money by setting up a joint tenancy account in the First Federal Savings & Loan Association of Jamestown and the Foster County State Bank of Carrington."

The theory upon which the plaintiff's case was presented to the jury by plaintiff's counsel was that Martin C. Fischer was induced to make a gift to his sister Josephine Kaiser of an interest in his bank accounts as a joint tenant with right of survivorship by fraud or undue influence exercised not by the donee, Josephine Kaiser, alone but pursuant to a plan, scheme or conspiracy of the donee, her husband, and Ella Nelson. The record is devoid of any direct evidence tending to show that any influence was brought to bear by the donee or her husband on Martin C. Fischer. They both deny making any suggestions to Fischer regarding the disposition or investment of his money and they deny having discussed the matter at any time with Ella Nelson. She also denies having discussed the matter with them. Both Miss Nelson and Carl Kaiser testified, with reference to the so-called will, that Fischer told her what to write. It does not appear, either by direct testimony or inference, that anyone suggested to him that he should give any of his property or bequeath it to Josephine Kaiser. The evidence does not show either directly or by a reasonable inference that Ella Nelson was a party to any plan, scheme or conspiracy to secure control of Fischer's property either before or after death or to induce him to so arrange his affairs that she or anyone else would have such control.

The plaintiff lays much emphasis on the age, state of health, lack of education and occupation of Martin C. Fischer as supporting an inference that he was not competent to dispose of his property or was at least readily susceptible to undue influence. He was a frugal farm laborer, able to write his name but little more. He read very little, if at all. His sister Mrs. Nogosek, her daughter and son-in-law, Katherine and Joseph McGuire, complain about his stinginess and how in the wintertime he lived with his relatives in the vicinity of Kensal and paid them very little over a period of some twenty years. During the summer he worked on farms in the general vicinity.

According to the evidence of the defendants, when Martin was ill or recuperating from an illness that had confined him to the hospital he went to the home of his sister Mrs. Kaiser in Jamestown for various periods, the first being for influenza in 1918. Similar instances occurred as the result of hernia and appendicitis. On April 23, 1960, he was stricken with coronary thrombosis while working on a farm. He was taken to a hospital in Jamestown until May 10, when he went to the Kaiser home where he stayed until July 10. During the intervening time he made three visits to Kensal, one of them being to attend the wedding of Mrs. McGuire's daughter. He went to Kensal on July 10 and stayed until July 14. It was the evening of the 14th that he had Miss Nelson summoned to the Kaiser home, and the transactions heretofore described occurred. He stayed with the Kaisers until July 22, when he went back to Kensal where he remained until October 16. He then went to visit relatives at DesLacs. On November 1 he was again stricken. He was brought back to a hospital in Jamestown and died November 11, 1960.

The doctor who had treated Fischer when brought to the hospital after his first stroke testified regarding his examination of Fischer on July 6, 1960, as follows:

"Well, of course, he wasn't as good as he was before. He had had this brain damage. He had made an excellent recovery. It had not affected his mental-

ity as far as I could tell. You can always by certain tests detect previous paralysis, but this is a case where they were so fine I could not detect them on July 6, I was able to detect them on May 20 when I had seen him before, but by July 6 he had recovered so much that I couldn't detect his physical paralysis. As far as his mental condition was concerned, it never was impaired that I could tell. He had lost his power of speech, however, which he recovered very well."

As supporting the verdict of the jury, the plaintiff points to the testimony of Joseph McGuire, his son-in-law Royce Nelson, and his daughter Constance Nelson. McGuire testified to a conversation he had with Martin Fischer about July 23, 1960, which was after his return to Kensal from the Kaiser home. Fischer had asked permission to park a trailer in McGuire's yard. McGuire testified:

"He says, 'I have to have a place to live, a place to stay,' and he says, 'I'm not going back to Josie's and Carl's anymore,' and I says, 'Why?' He says, 'Because they fixed out some papers and had me sign them,' and he says, 'It appears like all they want is my money.' And I asked him what the papers were. Well, he says, 'I don't know.' And I said, 'Who made out the papers?' and he said they had a lady come over to the house. I asked him if he knew the lady and he said he didn't."

McGuire later added that Fischer also stated that since then he couldn't write out a check without Josephine signing it. He also testified that at the time of this conversation Fischer's mind was wandering.

Royce Nelson testified that on June 22, 1960 he gave Fischer a ride from Jamestown to Kensal and that during the trip Fischer said he would like to stay at Kensal because he had too much trouble, Carl and Josie were arguing too much and that the only thing they wanted him for was to get his money.

Constance Nelson testified that she was in the car with her husband and Martin C. Fischer at the time testified to by her husband, heard their conversation, and heard Fischer say that all they were after was his money. Both of the Nelsons stated on cross-examination that they knew that after the conversation Fischer went back to the Kaiser home and stayed another month.

The testimony regarding these conversations was objected to as hearsay. The court overruled the objection and advised counsel that he would cover the matter in his instructions, which he did by advising the jury that the statements of these witnesses:

"* * * were admitted into evidence to show the state of mind of Martin C. Fischer on July 14 and July 15, 1960, as bearing on the issues of his mental capacity and of undue influence, and can only be considered by the jury for that purpose."

The admission of the statements of the witnesses and the instruction of the court are specified as errors.

Fischer, by placing his money in joint accounts with his sister Josephine, gave her a present interest therein with the right of the survivor to take the whole of the deposit remaining upon the death of either. First National Bank & Trust Co. of Fargo v. Green, 66 N.D. 160, 262 N.W. 596. This he had a right to do in preference over his sister Magdalena or any of his other relatives. Fischer was not a regular member of the Kaiser household, although he had spent the major portion of his time at the Kaiser home since being released from the hospital. However, he had made several trips to Kensal where he stayed for various periods. Katherine McGuire testified that he stayed with the McGuires at Kensal from July 10 until July 14, when he went to Jamestown and stayed with the Kaisers until the 22nd. It was on the evening of July 14

that he asked Mr. Kaiser to call Miss Nelson to come over to the Kaiser home. There is no evidence that either of the Kaisers at any time helped or advised Fischer with respect to his business matters, or that he confided in them in any way regarding his affairs. There is no evidence from which it can be inferred that a confidential relationship existed between Fischer and any of his relatives with whom he stayed from time to time. Much emphasis is laid on the fact that Fischer as the donor had little or no education. We also note that Josephine Kaiser, the donee, had only a third grade education. The testimony of the witness Schaffer, who handled the transaction at the savings and loan association office, shows that Fischer had sufficient knowledge about the transaction in which he was engaged to inquire about safety of his deposit and his right of withdrawal. The business was conducted between Schaffer and the prospective depositor.

■ This case was tried to a jury. Our review of the facts is therefore limited to the determination of whether there is substantial evidence to sustain the verdict. Porter v. Hendricks, N.D., 110 N.W.2d 417.

■ In Bender v. Bender, N.D., 72 N.W. 2d 220, we pointed out that where a verdict in favor of the contestants of a will is challenged on the ground of insufficiency of the evidence, we are required to consider the evidence in the light most favorable to the contestant but that does not mean that in order to sustain the verdict we may resort to suspicion, surmise or conjecture.

■ There are three indispensable factors involved in the establishment of undue influence: a person who can be influenced, the fact that improper influence was exerted, and submission to the overmastering effect of such unlawful conduct. Hendricks v. Porter, N.D., 110 N.W.2d 421; Johnson v. Johnson, N.D., 85 N.W.2d

211. The foregoing statement is also supported by Neill v. Brackett, 234 Mass. 367, 126 N.E. 93, wherein it is also stated:

> "Mere suspicion, surmise or conjecture are not enough to warrant a finding of undue influence. There must be a solid foundation of established facts upon which to rest an inference of its existence."

Statements to the same effect were made by the court in two Nebraska cases: In re Fehrenkamp's Estate, 154 Neb. 488, 48 N.W.2d 421, and In re O'Donnell's Estate, 158 Neb. 583, 64 N.W.2d 116.

■ The consideration by the jury of the conversations that Joseph McGuire, Royce Nelson and Constance Nelson testified they had with Fischer was limited by the court's instructions to a bearing on the state or condition of Fischer's mind on July 14 and 15, 1960. As so limited, they could be considered relevant only to the question of his susceptibility to undue influence. These conversations are not evidence of the fact that such influence was exercised or that the defendants acted pursuant to a plan or scheme to deprive Fischer of the control of his property. See Page on Wills, Lifetime Edition, Section 844; Wigmore on Evidence, Third Edition, Section 1734; Montague v. Street, 59 N.D. 618, 231 N.W. 728.

■ In appraising the evidence for the purpose of determining its sufficiency to support the verdict, we are confronted with the fact that it is wholly insufficient to warrant the jury in determining that there was a plan or scheme on the part of the defendants to defraud Fischer or to exercise undue influence over him as alleged in the complaint. There is no evidence that Miss Nelson acted on behalf of or in concert with the other two defendants in advising and acting as scrivener for Fischer in connection with drawing the document referred to as a will, the letter to the Foster County State Bank, or any other documents connected with the transaction. She

was a person who acted without profit or pay, who was summoned to the Kaiser home at the request of Fischer with whom she had talked briefly about his affairs about a week previously. There is no evidence of any solicitation or inducement on the part of either of the Kaisers that would tend to influence him in making the arrangements that he did with respect to his property, nor is there any evidence that they sought or secured the assistance of Miss Nelson in advising or aiding him with respect to any of these matters. Moreover, the evidence does not point to a confidential relationship between Fischer and the Kaisers or either of them which would have tended to support an inference of undue influence. The statements of Fischer, as related by McGuire and the Royce Nelsons, could not, under the instructions of the court and under the law, be considered by the jury for that purpose. In this connection we would further point out that testimony as to oral statements made by a deceased person is generally regarded as the weakest kind of evidence and is subject to close scrutiny. Stormon v. Weiss, N.D., 65 N.W.2d 475; Byers v. Byers, 242 Iowa 391, 46 N.W.2d 800; Cole v. Hartford Accident & Indemnity Co., 242 Iowa 416, 46 N.W.2d 811.

The "will" drawn by Miss Nelson, while not valid as a testamentary disposition of Fischer's property, is evidence of an intention on his part to empower his sister Josephine to pay his burial and hospital expenses and to retain as her own any residue. The establishment of the joint and survivorship accounts is consistent with that intention.

The evidence is insufficient to justify the verdict. The judgment and the order denying the judgment notwithstanding the verdict are reversed. Judgment will be entered notwithstanding the verdict, dismissing the action against the defendants.

P. O. SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.