463 So.2d 129 (1984)
Shelby Jean PARR, Individually, and as Executrix of the estate of Charles Moody Kelley, deceased
v.
Frances GODWIN and Luverne Bank & Trust Company.
83-871.
Supreme Court of Alabama.
November 16, 1984.
Rehearing Denied January 11, 1985.
*130 Charles J. Kettler, Jr., Luverne, for appellant.
John A. Nichols of Lightfoot & Nichols, Luverne, for appellees.
JONES, Justice.
This action by Shelby Jean Parr against Frances Godwin and the Luverne Bank & Trust Company seeks to determine the ownership of funds previously located in a checking account in the Bank. The account was entitled "C.M. Kelley or Frances Godwin." Claimants to the fund are Parr, individually and as executrix of the estate of C.M. Kelley, deceased, and Godwin, as the alleged survivor of a joint account with right of survivorship. The trial court ordered that the proceeds be paid to Godwin. Parr appeals. We affirm.

FACTS
On March 23, 1983, Charles Moody Kelley decided to change an existing individual checking account at the Bank into a joint checking account by adding the name of Frances Godwin to a signature card. The front of the form reflected the offering of eleven different kinds of accounts. The terms and conditions of each kind of account were found on the back side of the agreement.
Designation of the proper kind of account was accomplished by placing an "X" in a box to the left of the name of the kind of account requested. No such designation of the kind of account was made on the agreement, which is the basis of this lawsuit. Evidence during trial tended to show absence of designation as a mistake on the part of the Bank's personnel.
Testimony of Mildred Martin, a teller at the Bank, reflects that in March 1983 the decedent went to the Bank and requested that a second party's name be placed on his checking account. She stated that the Bank's tellers do not ordinarily open new accounts. She explained to the decedent that by having an "or" account, the money in the account would go to the second party named if anything should happen to him. She also told him that the second party could come in the Bank and make withdrawals on the account just as he could. The decedent indicated that this was what he wanted. He told the teller that he had left other money to relatives and that he wanted the person whose name appeared with his on the signature card to have the money in the account. The teller typed the agreement so that the names of the decedent and Frances Godwin appeared on its face. Thereafter, the decedent returned the agreement to the Bank, properly signed by both parties.
The Bank's teller testified that the signature card form used for the account was new to the Bank when the account was established. She stated that decedent's account was the first occasion on which she used the new form. She admitted her mistake in failing to mark the kind of account on the card, and stated that, but for this oversight, she would have marked the account "joint with survivorship," based on the conversation she had with the decedent.
The assistant bookkeeper at the Bank testified that prior to March 1, 1983 (the time the new signature card forms went into effect), any time more than one name *131 appeared on a signature card, the account was one held jointly with right of survivorship. She further stated that she knew of no joint accounts without survivorship rights held by the Bank.
The bookkeeper testified that the Bank attached no significance to the fact that Godwin's name did not appear on the checks or on the bank statements. She related that such was common practice.
A third witness, Mr. Goray, testified that he and the decedent had worked together closely for fifteen to seventeen years and that he had known the decedent since 1961. Goray said that he and the decedent were very close friends. He further stated that the decedent considered his relationship with Godwin to be very close and that, at one time, probably in 1982, Godwin and the decedent had been engaged to be married. The record reflects that the decedent told Goray, "Lamar, I will never love any woman but that one around there," and pointed to where Mrs. Godwin worked. Goray testified that the decedent told him that he had put Godwin's name on a checking account. Goray understood that the reason for the decedent's establishment of the account was his gratitude for Godwin's care of him during a previous illness.
C.M. Kelley died September 7 or 8, 1983. On or about September 16, 1983, Godwin withdrew all funds from the checking account. Appellant Shelby Jean Parr was later appointed executrix of Kelley's estate by the Probate Court of Crenshaw County.
Parr, the principal beneficiary under decedent's will, filed a complaint in the Circuit Court of Crenshaw County, Alabama, claiming the sum of $14,370 for money had and received (Count I); for conversion (Count II), as to Defendant Frances Godwin; for money had and received (Count III); and for breach of checking account agreement (Count IV), as to Defendant Bank. The complaint alleged that the decedent had a checking account deposit at the Bank in his name without survivorship; that such funds were owned by him; that Godwin withdrew the entire balance in the account on September 16, 1983, when both Defendants had notice of Kelley's death prior thereto; and that the Bank permitted the withdrawal in breach of its deposit agreement.
The trial court heard the case without a jury and entered judgment for the Defendants.

DECISION

As to Defendant Bank:
The liability of Defendant Bank is governed by Code 1975, § 5-5A-41. The statute is drafted in terms which exempt the Bank from liability for its payment of a joint account to the survivor:
"[I]rrespective of whether or not:
(1) the form of the deposit or deposit contract contains any provision of survivorship...."
We interpret this provision to mean that the Bank is not liable for its payment of the entire amount in the account to Godwin on September 16, 1981.

As to Defendant Godwin:
Although § 5-5A-41 exempts the Bank from liability, it does not empower the bank to determine ownership of a joint account in its depository. Jones v. Jones, 423 So.2d 205 (Ala.1982). Title is determined in accordance with the intentions of the parties "stated in the instrument creating such tenancy," pursuant to Code 1975, § 35-4-7.
The only word used in the checking account agreement in the instant case from which one might infer the creation of a joint tenancy with right of survivorship is "or." Therefore, at first glimpse, it appears that this Court's holding in Farmer v. Farmer, 455 So.2d 1 (Ala.1984), should be controlling; however, that case may be distinguished on its facts.
The primary issue in Farmer was the determination of the rightful payees of a promissory note. Appellant argued that, because the note was payable on its face to "Clyde E. Farmer, or Grace Farmer, or Charles Edgar Farmer" (emphasis added), *132 there was evidence of intent that the note be held in joint tenancy with right of survivorship. This Court refused to accept the argument and quoted its holding in Ex parte Lovett, 450 So.2d 116, 117 (Ala.1984):
"As between the claimants to the proceeds, here, the administratrix of the estate of Mrs. Spruell, Mrs. Uptain on the one hand, and Mrs. Lovett on the other, § 35-4-7, Code [1975], is the controlling statute with regard to Mrs. Lovett's claim to the proceeds as a joint tenant with right of survivorship. Title to personalty by that act is determined in accordance with the intention of the parties `stated in the instrument creating such tenancy.' Nothing in the evidence suggests that a joint tenancy with right of survivorship was intended. That being so, Mrs. Lovett is not entitled to the entire fund, because the certificate of deposit did not create a survivorship estate in her."
Both Farmer and Lovett can be distinguished from this case, because in each of those cases the instrument at issue was complete on its face. Therefore, there existed no reason for the admission of parol evidence. To the contrary, here, we have an instrument that is not complete on its face.
No one designated the proper kind of account on the front of the instrument. Thus, the instrument is incomplete and therefore ambiguous. We have two alternatives in this case. We may discard the contract as void for its incompleteness, or we may accept the contract as incomplete and allow parol evidence to clarify the ambiguity. Because of the obvious intent on the part of the decedent to execute the contract as a completed document, we hold that the ambiguity created by the incompleteness is subject to clarification and being made certain by parol evidence.
In our consideration of the issue of admission of parol evidence to explain the incomplete instrument, the case of Port City Construction Co. v. Henderson, 266 So.2d 896, 48 Ala.App. 639 (1972), is persuasive. There, the Court of Civil Appeals found no error in the trial court's allowing parol evidence of consistent additional terms and of facts and circumstances surrounding the formation of a contract, where the contract was ambiguous, lacked clarity, and did not include all the terms necessary for construction.
The fundamental determination in the legal construction of contracts is the real intention of the parties. 17 C.J.S. Contracts § 49 (1963). The primary rule of construction is that the court must, if possible, ascertain and give effect to the common intention of the parties, so far as that may be done without contravention of legal principles, statutes, or public policy. C.J.S., Id., at 48.
In Lovett, supra, the evidence reflected a certificate of deposit carried on the bank's records in the names of Cora Spruell or Betty Lovett. This Court found nothing in the evidence to suggest that a joint tenancy with right of survivorship was intended. Contrary to the evidence in Lovett, here, we have evidence of an inter vivos gift. See, for example, Dempsey v. First National Bank of Scranton, 359 Pa. 177, 58 A.2d 14 (1948), involving a joint account where the Court held that the proof of the decedent's signature and the offering of the signature card into evidence was prima facie evidence of a gift.[1] In the case at bar, the evidence suggests that decedent's executed signature card, when clarified by parol evidence, expresses an intent to create a joint tenancy with right of survivorship.

CONCLUSION
Luverne Bank & Trust Company is not liable to the plaintiff in this action, because of the operative effect of Code 1975, § 5-5A-41. As to the liability of Godwin, we look first to the instrument which established *133 the joint account entitled "C.M. Kelley or Frances Godwin." Because the signature card is incomplete, parol evidence has been allowed to explain the intent of the party in creating the instrument. Evidence reflects a mistake on the part of Bank personnel in failure to mark the appropriate box on the card indicating an account held jointly with right of survivorship.
Central to our holding is the fact that the signature card was not intended to have any operative effect apart from the marking of an appropriate box indicating the nature of the account. It is this incompleteness of the writing that creates the ambiguity, to which the parol evidence speaks, that distinguishes this case from Farmer and Lovett. Because of the parol evidence, and because this is purely a factual issue, we cannot say that the trial court erred in holding that all the funds in the joint checking account belong to Frances Godwin.
The decision of the Circuit Court of Crenshaw County is affirmed.
AFFIRMED.
ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., dissent.
TORBERT, Chief Justice (dissenting).
From 1943 to 1980 the banking statutes of the Alabama Code controlled the determination of ownership of funds in a joint bank account. Code 1940, Title 5, § 128(2a) (Recomp.1958), which was recodified by Code 1975, § 5-1-25, provided in pertinent part:
"When a deposit shall hereafter be made in any bank doing business in this state in the names of two persons payable to either of such persons, or payable to the survivor of them, the said deposit shall upon the death of either of said persons become the property of and be paid in accordance with its terms to the survivor, irrespective of whether or not the funds deposited were the property of only one of said persons, and irrespective of whether or not at the time of the making of such deposit there was any intention on the part of the person making such deposit to vest the other with a present interest therein, and irrespective of whether or not only one of said persons during their joint lives had the right to withdraw such deposit, and irrespective of whether or not there was any delivery of any bank book, account book, savings account book, or certificate of deposit by the person making such deposit to the other of such persons."
It has been noted that this language provided that a deposit made in the name of two persons payable to either of such persons or payable to the survivor of them would become the property of the survivor and be paid to the survivor in the event of the death of either. Macon v. First National Bank of Ashford, 378 So.2d 1128 (Ala.Civ.App.1979).
This Court in Harris v. Dial, 398 So.2d 679 (Ala.1981), had occasion to consider the applicability of § 5-1-25 to a joint checking account with a right of survivorship agreement. Our decision in Harris stated that § 5-1-25 "has been considered ... to give the survivor of such an account the right to the proceeds remaining at the death of the other, without any duty resting upon the survivor to show a donative intent upon the party furnishing the funds." 398 So.2d at 681.
A similar result was obtained in Chandler v. Farmers and Merchants Bank, 355 So.2d 726 (Ala.Civ.App.1978). However, Chandler concerned the applicability of § 128(2a) and involved the determination of ownership of funds in a joint checking account and a joint savings account, neither of which contained a provision for right of survivorship. The opinion in Chandler stated, "The law is clear ... that a survivor of a joint bank account is entitled to the proceeds of such account, without a showing of donative intent, if the account provided for a right of survivorship." The court added, "However, the mere fact that one is a survivor of a joint bank account, *134 without more, does not unequivocally vest the proceeds in the survivor." 355 So.2d at 728. Chandler went on to state that in the absence of survivorship language § 128(2a) did not preclude an investigation into the donor's intent to determine the disposition of the proceeds in the account. The effect of § 5-1-25 and its predecessor, § 128(2a), was to create a conclusive presumption of survivorship and donative intent. Ex parte Lovett, 450 So.2d 116, 117 (Ala.1984).
Section 5-1-25 was repealed and superseded by Code 1975, § 5-5A-41 (Repl.Vol. 1981), following passage of the Alabama Banking Code. Acts of Alabama 1980, Act No. 80-658, May 28, 1980, pp. 1259-1337. Section 5-5A-41 merely exonerates a bank from liability for payment of a joint bank account. Comments to that statute clearly indicate that it does not govern the ownership of funds in a joint account but that ownership must be determined by reference to other appropriate law.
The first occasion we had to comment on the effect of § 5-5A-41 came in Jones v. Jones, 423 So.2d 205 (Ala.1982). Jones involved an interpleader action filed by a bank for determination of the proper payment of funds in a joint savings account following the death of one of the parties. Jones established the principle that following the enactment of § 5-5A-41 the ownership of funds in a joint account was controlled by principles of property law, specifically Code 1975, § 35-4-7. Our opinion stated:
"Admittedly, [§ 5-5A-41] is drafted in terms which exempt the bank from liability for its payment of a joint account to the survivor. But the statute does not empower the bank to determine ownership of a joint account in its depository. Rather, title is determined in accordance with the intentions of the parties, `stated in the instrument creating such tenancy,' pursuant to § 35-4-7. When § 5-5A-41 superseded § 5-1-25 ... the survivorship between joint tenants provisions of § 35-4-7, which applies to personal as well as real property, remained fully operative."
423 So.2d at 207.
Two recent decisions have followed the holding in Jones. Lovett, supra, involved property in the nature of a jointly owned certificate of deposit, and Farmer v. Farmer, 455 So.2d 1 (Ala.1984), involved a jointly owned promissory note. In both, the incidents of ownership were the same; the names of the joint owners were merely separated by the word "or" and the instrument expressed no intention of the parties to create a right of survivorship. As between those contesting title, it was held that § 35-4-7 controlled the determination of ownership of the proceeds.
Section 35-4-7 provides:
"When one joint tenant dies before the severance, his interest does not survive to the other joint tenants but descends and vests as if his interest had been severed and ascertained; provided, that in the event it is stated in the instrument creating such tenancy that such tenancy is with right of survivorship or other words used therein showing such intention, then, upon the death of one joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument. This shall include those instruments of conveyance in which the grantor conveys to himself and one or more other persons and in which instruments it clearly appears that the intent is to create such a survivorship between joint tenants as is herein contemplated."
It should be clear that under § 35-4-7 a grant of personal property, as in this case, or a grant of real property to two or more persons creates in them a tenancy in common with respect to such property unless the proviso in that statute is complied with; that is, the instrument creating the estate must clearly indicate that a joint tenancy with right of survivorship was intended. It has consistently been stated that an instrument creating a joint tenancy with right of survivorship must clearly express the incident of survivorship if such was intended *135 by the parties. Smith v. Smith, 418 So.2d 898 (Ala.1982); Durham v. Durham, 400 So.2d 751, 752 (Ala.1981); Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972).
In the instant case, the signature card listed eleven different kinds of accounts. A desired account was to be designated by placing an "X" in a box provided to the left of each account. No box was marked with an "X". From this it cannot be said that the proviso in § 35-4-7 has been met. There is nothing in the instrument establishing the joint checking account to indicate that a joint tenancy with right of survivorship was intended. The majority would permit the admission of parol evidence in order to clarify the uncertainty arising from the failure to designate a specific account on the signature card. I cannot agree. The majority has failed to make clear that the rule adopted today is applicable only to contracts, as in the instant case, and not to deeds. The resulting effect is to admit parol evidence to determine whether an estate created by the parties is a joint tenancy with right of survivorship or a tenancy in common. This is in conflict with that rule of construction that joint owners of property, real or personal, will be construed as holding as tenants in common and not as joint tenants with right of survivorship where there has been no express manifestation of intent otherwise.
Therefore, I must dissent.
MADDOX, FAULKNER and SHORES, JJ., concur.
NOTES
[1] For other cases on this point, see Inwood v. Nilsson, 96 Ill.App.2d 272, 238 N.E.2d 277 (1968), and First National Bank & Trust Co. of Fargo v. Green, 66 N.D. 160, 262 N.W. 596 (1935).